John W. DASHNER, Sr. and Loretta A. Dashner, Individually and on behalf of and in their capacity as Parents and Natural Guardians of John W. Dashner, Jr., An Incapacitated Person and Anna L. Miller, Individually and on behalf of and in her capacity as the Parent and Natural Guardian of Michael A. Moatz, An Incapacitated Person

v.

The HAMBURG CENTER of the DEPARTMENT OF PUBLIC WELFARE, Appellant.

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 2003.
Decided March 12, 2004.

John W. Stahl, Allentown, for appellant.

Jay N. Abramowitch, Wyomissing, for appellees.

BEFORE: FRIEDMAN, Judge, LEAVITT, Judge, and MIRARCHI, JR., Senior Judge.

OPINION BY Judge LEAVITT.

The Hamburg Center of the Department of Public Welfare (Center) appeals from the April 21, 2003 order of the Court of Common Pleas of Berks County (trial court), which denied summary judgment to the Center as to Counts I, II, III and IV of a sixteen-count Complaint filed against the Center by (1) John W. Dashner, Sr. and Loretta A. Dashner, individually and as parents and guardians of John W. Dashner, Jr. (Dashner),[1] an incapacitated person, and (2) Anna L. Miller, individually and as the parent and guardian of Michael A. Moatz (Moatz),[2] an incapacitated person (collectively Parents). Parents seek damages for tortious assaults upon their children, but the Center contends that Parents' tort claim is barred by sovereign immunity.

The Center is a residential intermediate care facility for the mentally retarded that is operated by the Department of Public Welfare. Craig Muthersbaugh (Muthersbaugh) was an employee of the Center from February 18, 1997, until July 28, 2000, first as a probationary Aide Trainee and thereafter as a Residential Services Aide (RSA).[3] Between August 1, 1999, and the spring of 2000, Muthersbaugh sexually assaulted Dashner and Moatz; the exact dates and number of acts of abuse are unknown. The Center became aware of the abuse on June 19, 2000, when Dashner made comments to another RSA about having a "secret" involving Muthersbaugh. R.R. at 200a, 387a. Muthersbaugh was suspended on June 20, 2000 and later terminated. On October 30, 2000, pursuant to a plea agreement, Muthersbaugh pleaded guilty to two counts of indecent assault and two counts of indecent exposure. He was sentenced to six years of probation.

---

1. Dashner is a moderately retarded man in his early thirties who has resided at the Center since 1991.

2. Moatz is also a moderately retarded man in his early thirties, who resided at the Center from 1989 until June 2002.

3. As a Residential Services Aide, Muthersbaugh's job duties included: (1) carrying out routine medical procedures, such as measuring temperatures, administering enemas, and providing external treatments and first aid, under the supervision of licensed personnel; (2) completing progress reports for assigned patients and documenting his assigned health care tasks; (3) providing emergency care until the arrival of medical staff; and (4) assisting in the establishment of recreational and social activities designed to enhance the personal growth and general health status of the Center's patients. Reproduced Record at 275a (R.R. ——).

On November 9, 2000, Parents filed a complaint with the trial court. In Counts I and II of their Complaint, Parents raised a number of negligence claims against the Center.[4] In Counts III and IV of their Complaint, Parents averred that the Center was negligent in its hiring, supervision and retention of Muthersbaugh.[5] The remaining counts of Parents' Complaint asserted claims against the Center under theories of agency and/or vicarious liability (Counts V and VI), breach of contract (Counts VII, VIII, IX, and X), and corporate negligence (Counts XI and XII). Parents also raised four claims directly against the Department of Public Welfare under theories of agency and/or vicarious liability (Counts XIII and XIV) and corporate negligence (Counts XV and XVI).[6]

On November 7, 2002, the Center filed a motion for summary judgment. The Center argued that it was immune from liability because the allegations in Counts I through IV of the Complaint describe negligent institutional, i.e. corporate, acts that do not fall within the medical professional liability exception to sovereign immunity. The Center further argued that Parents had not produced an expert witness to

4. In Counts I and II of the Complaint, Parents alleged that the Center was liable for the following:

(a) Failing to conduct adequate background checks and/or evaluations on its employees such as Craig Muthersbaugh;

(b) Failing to adequately investigate the qualifications of Craig Muthersbaugh prior to his hiring and/or thereafter;

(c) Failing to warn [Parents] about the violent and dangerous propensities of Craig Muthersbaugh when it knew or should have known of said propensities;

(d) Failing to place [Parents'] Dependents in a place where they would be free from the abuse of Craig Muthersbaugh;

(e) Failing to enact and/or enforce proper and adequate procedures which would have prevented Craig Muthersbaugh's abuse of [Parents'] Dependents;

(f) Failing to adequately address and investigate the improper relationships between [Parents'] Dependents and Craig Muthersbaugh when its supervisors and/or other employees knew or should have known of said improper relationships;

(g) In allowing one of its employees, Craig Muthersbaugh, to abuse his position of power and trust by initiating and/or conducting an improper relationship with [Parents'] Dependents on the premises of Hamburg Center;

(h) In disregarding the welfare of [Parents'] Dependents as their patients after the initiation of the improper relationship that Craig Muthersbaugh initiated when they knew or should have known of said relationship;

(i) In failing to take all necessary steps to separate [Parents'] Dependents and Craig Muthersbaugh after they knew or should have known of the improper relationship that existed;

(j) Failing to provide a safe treatment facility for [Parents'] Dependents.
R.R. at 11a–12a.

5. In Counts III and IV of the Complaint, Parents alleged that the Center was liable for the following:

(a) Failing to exercise reasonable care in selecting, hiring, retaining, screening, monitoring, supervising and/or evaluating the personnel who actually provided healthcare services to [Parents'] Dependents, including but not limited to Craig Muthersbaugh;

(b) Failing to conduct an adequate background check and/or evaluation prior to the hiring of Craig Muthersbaugh;

(c) Failing to adequately investigate the qualifications of Craig Muthersbaugh prior to his hiring;

(d) Retaining Craig Muthersbaugh after it knew or should have known of his improper conduct with regard to [Parents'] Dependents;

(e) Failing to take the steps necessary to protect [Parents'] Dependents from Craig Muthersbaugh after it knew or should have known of Craig Muthersbaugh's improper conduct and/or relationship with [Parents'] Dependents.
R.R. at 15a.

6. Counts VII, VIII, IX, X, XIII, XIV, XV, and XVI were deleted by stipulation of the parties on March 7, 2001.

establish that the Center breached professional standards of conduct. The Center also asserted that Parents had produced no evidence that Muthersbaugh had a history of abusive conduct which the Center could have discovered before hiring him or that the Center did not adequately supervise Muthersbaugh after hiring him. In support of its motion, the Center produced evidence pertaining to its hiring of Muthersbaugh, its evaluation of his job performance and its termination of Muthersbaugh after learning of his abusive conduct.

Following argument on April 21, 2003, the trial court denied summary judgment to the Center on Counts I through IV of the Complaint.[7] The Center requested that the trial court amend its order to include the statement that the order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal may materially advance the ultimate termination of the matter. Pa.R.A.P. 1311 (Interlocutory Appeals by Permission); 42 Pa.C.S. § 702(b). The trial court granted the request, amended the order and stayed all proceedings pending disposition of the Center's petition for permission to appeal to this court. On June 6, 2003, this Court granted the Center's petition.

The Center filed a concise statement of matters complained of on appeal. The Center argued that the trial court erred in denying summary judgment with respect to Counts I through IV of the Complaint because: (1) the alleged negligent acts set forth in Counts I through IV are institutional acts, and, as a result, sovereign immunity is not waived; and (2) Parents failed to produce evidence essential to their cause of action, including evidence of gross negligence or incompetence as required by Section 603 of the Mental Health and Mental Retardation Act of 1966 (Mental Health Act).[8]

In its opinion supporting the order denying summary judgment with respect to Counts I through IV, the trial court concluded that the alleged negligent acts in Counts I through IV of the Complaint were not institutional acts but, rather, were the acts of the Center's employees. Thus, the trial court concluded that sovereign immunity was waived pursuant to an exception to sovereign immunity related to acts of medical professionals employed by the Commonwealth.[9]

■ Our scope of review of an order denying summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion. *Fleetwood Area School District v. Berks County Board of Assessment Appeals*, 821 A.2d 1268 (Pa.Cmwlth.2003). A party may move for summary judgment in whole or in part as a matter of law if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action. Pa. R.C.P. No. 1035.2(2).

7. The trial court granted the Center's motion for summary judgment on Counts V, VI, XI, and XII, noting that those claims were barred by sovereign immunity.

8. Act of October 20, 1966, Special Sess., P.L. 96, 50 P.S. § 4603.

9. The trial court also stated that the Center's "failure to produce evidence" issue was waived since it had not been raised properly in the Center's brief in support of summary judgment. Nevertheless, the trial court stated that it had reviewed the evidence and believed that Parents produced sufficient evidence to overcome the Center's motion for summary judgment.

■ The trial court concluded that Counts I through IV of the Complaint were not barred by sovereign immunity because Muthersbaugh's actions fell within the "medical-professional liability exception" to sovereign immunity set forth in 42 Pa.C.S. § 8522(b)(2).[10] We disagree.

In Counts I and II of the Complaint, Parents allege that the Center was negligent in failing to conduct adequate background checks and/or evaluations on its employees; failing to adequately investigate the qualifications of Muthersbaugh; failing to warn Parents about Muthersbaugh's violent and dangerous propensities; failing to place Dashner and Moatz in a place free from Muthersbaugh's abuse; failing to enact and/or enforce proper procedures to prevent abuse; failing to adequately address and investigate the improper relationships between Dashner and Moatz and Muthersbaugh; allowing Muthersbaugh to abuse his position; disregarding the welfare of Dashner and Moatz after the initiation of the improper relationships; failing to take all necessary steps to separate Dashner and Moatz from Muthersbaugh; and failing to provide a safe treatment facility. In Counts III and IV of the Complaint, Parents raise substantially similar allegations in support of their claim that the Center was negligent in its hiring, supervision and retention of Muthersbaugh.

Whether labeled as "Negligence, Carelessness, Recklessness" (Counts I and II) or "Negligent Hiring, Supervision and Retention" (Counts III and IV), the averments of these Counts of the Complaint are based upon the alleged institutional, administrative negligence of the *Center*. Based upon our Supreme Court's holding in *Moser v. Heistand*, 545 Pa. 554, 681 A.2d 1322 (1996), these allegations do not fall within the medical-professional liability exception to sovereign immunity.

In holding that sovereign immunity precludes a cause of action based on corporate liability against Commonwealth medical facilities, the *Moser* Court explained:

A cause of action in corporate negligence is based on the negligent acts of an institution. For such a cause of action to be viable against a Commonwealth hospital, sovereign immunity for the acts of the institution must be waived. Institutions do not act on their own, but through the creation and enforcement of policies established by their officers and employees. Nevertheless, the medical-professional liability exception to sovereign immunity specifically refers to [a]cts of health care employees and a Commonwealth party who is a doctor, dentist, nurse or related health care professional. Accordingly, while 42 Pa.C.S. 8522(b)(2) waives sovereign immunity for the negligent acts of specified individuals when they are working at or for a Commonwealth institution, *it does not waive sovereign immunity for individuals who act as the corporate entity.*

10. It states:

(b) **Acts which may impose liability.**—The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

\* \* \*

(2) **Medical-professional liability.**—Acts of health care employees of Commonwealth agency medical facilities or institutions or by a Commonwealth party who is a doctor, dentist, nurse or related health care personnel.

42 Pa.C.S. § 8522(b)(2).

While Commonwealth medical facilities are not immune from suit based on the negligence of their health care employees (respondeat superior), 42 Pa.C.S. 8522(b)(2) does not provide for a waiver of immunity for the facilities themselves. Because of our responsibility to construe narrowly the legislatively created exceptions to sovereign immunity ... we cannot extend the corporate theory of liability to state owned medical facilities. Accordingly, plaintiffs who seek recovery from the Commonwealth for damages sustained in such facilities must base their cause of action on the negligence of the parties specifically enumerated in 42 Pa. C.S. 8522(b)(2).

*Id.* at 561–562, 681 A.2d at 1326 (emphasis added). Parents attempt to distinguish *Moser*, stating:

The institution itself, in that case, had absolutely nothing to do with the treatment rendered to the Plaintiff. In this case, however, it was the healthcare decision of [the Center's] *administrators relating to its policies* which formulate the basis of [Respondents'] claims. Indeed, *Moser* ... specifically stands for the proposition that medical facilities run by the Commonwealth are liable under a respondeat superior/vicarious liability [theory] for the negligence of their healthcare employees.... This is exactly what is alleged in this case and

requires this Honorable Court to uphold the Trial Court's denial of the ... Center's Motion for Summary Judgment.

Appellees' Brief at 11 (citations omitted) (emphasis added).

Parents' argument fails for two reasons: first, it overlooks the fact that the trial court has already dismissed their vicarious liability claim (Count V); and, second, regardless of whether Muthersbaugh is a "health care employee" who falls within the medical-professional liability exception to sovereign immunity, the averments in Counts I, II, III, and IV do not focus upon his actions. Rather, they focus upon the alleged institutional, administrative negligence of the *Center*. Under *Moser*, the Center is immune from suit with respect to these allegations.[11]

Accordingly, the order of the trial court denying the Center's motion for summary judgment is reversed.

### ORDER

AND NOW, this 12th day of March, 2004, the order of the Court of Common Pleas of Berks County dated July 7, 2003, in the above-captioned matter, is hereby reversed.

CONCURRING OPINION BY Judge FRIEDMAN.

I concur in the result. However, I do not agree with the majority's holding that

---

11. Because we find that all of the remaining Counts of the Complaint are barred by sovereign immunity, we need not consider the Center's second issue: whether Parents failed to produce evidence essential to their cause of action, including evidence of gross negligence or incompetence as required by Section 603 of the Mental Health Act. As this Court has noted previously, "Section 603, instead of waiving sovereign immunity, actually provides an additional immunity to state agencies and their employees acting pursuant to the [Mental Health Act]." *Heifetz v. Philadelphia State Hospital*, 22 Pa.Cmwlth. 325, 348 A.2d 455, 457 (1975). The limited waiver provisions of Section 603 would permit an action against individual officials and employees for civil rights violations or common law torts. *See, e.g., Rhines v. Herzel*, 481 Pa. 165, 392 A.2d 298 (1978) (permitting wrongful death action against individually named hospital personnel whose conduct was grossly negligent or malicious and lacking in good faith). Here, however, the averments of Parents' Complaint are all based upon the alleged institutional, administrative negligence of the Center, not any of its individual employees.

Counts I, II, III and IV of the Complaint filed by the plaintiffs[1] against The Hamburg Center of the Department of Public Welfare (Hamburg Center) set forth claims of corporate liability and that, as a result, the Hamburg Center is immune from liability and entitled to summary judgment. Unlike the majority, I would reverse the denial of summary judgment by the Court of Common Pleas of Berks County (trial court) based on the plaintiffs' failure to present evidence to refute the Hamburg Center's showing that it acted properly.

While employed by the Hamburg Center as a Residential Services Aide, Craig Muthersbaugh (Muthersbaugh) sexually assaulted two mentally retarded residents.[2] Subsequently, the victims' parents filed a Complaint against the Hamburg Center. In Counts I through IV of the Complaint, the parents seek damages for injuries caused by the Hamburg Center's failure to: (1) enact and enforce adequate procedures to prevent patient abuse; (2) provide a safe facility; (3) adequately investigate Muthersbaugh before hiring him; (4) adequately supervise Muthersbaugh after hiring him; and (5) adequately address Muthersbaugh's abusive behavior after learning about it.[3]

The Hamburg Center filed a motion for summary judgment, arguing that it is immune from liability because the allegations in Counts I through IV describe negligent institutional, i.e., corporate, acts that do not fall within the medical professional lia-bility exception to sovereign immunity. (R.R. at 409a–10a.) The Hamburg Center also asserted that the parents produced no expert witness to establish that the Hamburg Center breached professional standards of conduct; moreover, the parents produced no evidence that Muthersbaugh had a history of abusive conduct which the Hamburg Center could have discovered before hiring him or that the Hamburg Center did not adequately supervise Muthersbaugh after hiring him. (See R.R. at 255a–59a.) In support of its motion, the Hamburg Center produced evidence pertaining to its hiring of Muthersbaugh, its evaluation of his job performance and its termination of Muthersbaugh after learning of his abusive conduct. (See Motion, Ex. A, R.R. at 260a–306a.)

The trial court denied summary judgment to the Hamburg Center on Counts I through IV. The Hamburg Center then requested that the trial court amend its order to include the statement that the order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal may materially advance the ultimate termination of the matter. The trial court granted the request, amended the order and stayed all proceedings pending disposition of the Hamburg Center's petition for permission to appeal to this court. On June 6, 2003, this court granted the Hamburg Center's petition.

1. The Complaint was filed by John W. Dashner, Sr. and Loretta A. Dashner, Individually and on behalf of and in their capacity as Parents and Natural Guardians of John W. Dashner, Jr., An Incapacitated Person and Anna L. Miller, Individually and on behalf of and in her capacity as the Parent and Natural Guardian of Michael A. Moatz, An Incapacitated Person.

2. As a Residential Services Aide, Muthersbaugh's job duties included: (1) carrying out routine medical procedures, such as temperatures, enemas, external treatments and first aid, under the supervision of licensed personnel; (2) completing required documentation of his assigned health care tasks; and (3) providing emergency care until the arrival of medical staff. (R.R. at 275a.)

3. See Complaint, ¶¶ 32, 44.

The Hamburg Center filed a concise statement of matters complained of on appeal. The Hamburg Center argued that the trial court erred in denying summary judgment with respect to Counts I through IV because: (1) the alleged negligent acts set forth in Counts I through IV are institutional acts, and, as a result, sovereign immunity is not waived; and (2) the parents failed to produce evidence essential to their cause of action, including evidence of gross negligence or incompetence as required by section 603 of the Mental Health and Mental Retardation Act of 1966 (Mental Health Act).[4] The Hamburg Center stated that it had cited section 603 of the Mental Health Act to the trial court at oral argument on the motion for summary judgment, (*See* R.R. at 505a–06a), and, thus, properly raised the issue of the parents' failure to produce evidence.

In its opinion supporting the order denying summary judgment with respect to Counts I through IV, the trial court stated its conclusion that the alleged negligent acts in Counts I through IV of the Complaint are *not* institutional acts but, rather, are the acts of the Hamburg Center's employees. Thus, the trial court concluded that sovereign immunity is waived pursuant to the medical professional liability

exception to sovereign immunity. The trial court also stated that the Hamburg Center's "failure to produce evidence" issue was not raised properly in the Hamburg Center's brief in support of the motion for summary judgment.[5] Thus, it too was waived. Nevertheless, the trial court stated that it had reviewed the evidence and believed that the parents produced sufficient evidence to overcome the Hamburg Center's motion for summary judgment.[6]

## I. Sovereign Immunity

In its appeal to this court, the Hamburg Center argues that the trial court erred in concluding that Counts I through IV of the Complaint are not barred by the doctrine of sovereign immunity. Unlike the majority, which agrees entirely with this argument, I agree only in part.

### A. Applicable Law

Section 8522(b)(2) of the act known as the Sovereign Immunity Act provides as follows:

**(b) Acts which may impose liability.-** The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the

---

4. Act of October 20, 1966 (Special Session), P.L. 96, 50 P.S. § 4603. Section 603 provides, in pertinent part, as follows:

No person and no governmental ... agency shall be held civilly or criminally liable for any ... thing done pursuant to the provisions of this act if he acted in good faith and not falsely, corruptly, maliciously or without reasonable cause; provided, however, that causes of action based upon *gross negligence or incompetence* shall not be affected by the immunities granted by this section.

50 P.S. § 4603 (emphasis added). Gross negligence occurs where the behavior of the defendant is flagrant, grossly deviating from the ordinary standard of care. *Albright v. Abington Memorial Hospital*, 548 Pa. 268, 696 A.2d 1159 (1997). I would conclude that,

while Muthersbaugh's conduct constitutes a crime, Muthersbaugh's acts also constitute gross negligence. Nevertheless, the Hamburg Center's liability for Muthersbaugh's conduct is not before us here.

5. The trial court stated that the Hamburg Center's "Statement of Questions Involved" did not set forth the issue. (*See* R.R. at 404a.)

6. A party may move for summary judgment in whole or in part as a matter of law if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action. Pa. R.C.P. No. 1035.2(2).

defense of sovereign immunity shall not be raised to claims for damages caused by:

. . . .

(2) **Medical-professional liability.-** Acts of *health care employees*[7] of Commonwealth agency medical facilities or institutions *or* by a Commonwealth party who is a *doctor, dentist, nurse or related health care personnel.*

42 Pa.C.S. § 8522(b)(2) (emphasis added).

In *Moser v. Heistand,* 545 Pa. 554, 681 A.2d 1322 (1996), our supreme court stated that 42 Pa.C.S. § 8522(b)(2) waives sovereign immunity for the negligent acts of the specified individuals when they are working at or for a Commonwealth institution; however, "it does not waive sovereign immunity for individuals who act as the corporate entity." *Moser,* 545 Pa. at 561, 681 A.2d at 1326. In that regard, our supreme court stated, "Institutions do not act on their own, but through the creation and enforcement of policies established by their officers and employees." *Id.* Thus, 42 Pa.C.S. § 8522(b)(2) does not waive sovereign immunity for officers and employees who create and enforce policies on behalf of an institution.

In addition, our supreme court stated that a hospital has the following non-delegable duties:

(1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment;

(2) a duty to select and retain only competent physicians;

(3) a duty to oversee all persons who practice medicine within its walls as to patient care; and

(4) a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for all patients.

*Id.* at 558, 681 A.2d at 1324 (quoting *Thompson v. Nason Hospital,* 527 Pa. 330, 339–40, 591 A.2d 703, 707 (1991)). Thus, logically, 42 Pa.C.S. § 8522(b)(2) does not waive sovereign immunity for officers and employees of the Hamburg Center who create and enforce policies relating to these non-delegable duties.

**B. Counts I to IV**

Paragraph 32(e) of the Complaint, relating to Counts I and II, alleges that the Hamburg Center failed to enact and/or enforce adequate procedures to prevent the abuse that occurred here. However, the duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for all patients is a non-delegable *corporate* duty of the Hamburg Center. To the extent that the Hamburg Center's officers and employees failed to enact or enforce adequate procedures to prevent the abuse that occurred here, the Hamburg Center is immune from liability. *See Moser.*

Paragraph 32(j) of the Complaint alleges that the Hamburg Center failed to provide a safe treatment facility. However, the duty to provide a safe facility is a *corporate* duty; thus, to the extent that the Hamburg Center's officers and employees failed to create and enforce policies to ensure that their treatment facility was safe, the Hamburg Center is immune from liability. *See Moser.*

The remaining paragraphs of Counts I through IV do *not* allege the breach of any corporate duty by individuals acting as the corporate entity. The employees who failed to adequately investigate Muthers-

---

7. Because a "Residential Services Aide" performs health care duties, Muthersbaugh must be considered a health care employee.

baugh before hiring him, to adequately supervise Muthersbaugh after hiring him and to adequately address Muthersbaugh's abusive behavior after learning about it were *not* acting as the corporate entity by creating or enforcing institutional policies.[8] Thus, I submit that the Hamburg Center is not immune from liability for the injuries sustained as a result of the alleged negligence of these individuals and that summary judgment based on sovereign immunity is improper.

### C. Majority opinion

In my view, the majority's analysis of the sovereign immunity issue ignores the guidelines set forth in *Moser* for determining whether employees are acting as the corporate entity. The majority simply presents two reasons for reversing the trial court's denial of summary judgment, but I am not convinced that either reason provides grounds for reversing the trial court.

First, the majority states that Count V of the Complaint sets forth a vicarious liability claim that was dismissed. (Majority op. at 940.) However, our concern here is *not* Count V. The only question before us is whether the trial court should have granted summary judgment with respect to Counts I through IV. Moreover, I am not aware of any rule of law limiting the number of vicarious liability counts in a complaint to one. If the Majority is suggesting. that Count V is the *same* as Counts I through IV, I cannot agree. Count V of the Complaint sets forth a vicarious liability claim with respect to the acts of Muthersbaugh, and Counts I through IV set forth vicarious liability claims with respect to the Hamburg Center employees who hired, supervised and

disciplined him. (*See* R.R. at 17a.) These are *different* vicarious liability claims.

Second, the majority states that the averments in Counts I through IV of the Complaint focus on the alleged institutional administrative negligence of the Hamburg Center. (Majority op. at 940.) However, as indicated above, the test to determine whether an employee acts as the corporate entity is *not* whether the employee performs administrative job duties but, rather, whether the employee creates or enforces institutional policies. *See Moser.* To reiterate, *none* of the people who hired, supervised or disciplined Muthersbaugh were creating or enforcing the policies of the Hamburg Center relating to hiring, supervising and disciplining employees.

To the extent that the majority suggests the employees who hired, supervised and disciplined Muthersbaugh were acting as the corporate entity because they were enforcing the policies of the Hamburg Center, I point out that there is no evidence in the record before us that the Hamburg Center even had policies on the hiring, supervising and disciplining of employees. Obviously, one cannot conclude that an employee is enforcing a policy without knowing that a policy exists or what the policy is. Thus, there are genuine issues of fact as to whether the Hamburg Center employees who hired, supervised and disciplined Muthersbaugh were acting as the corporate entity. For that reason, I submit that the majority's summary judgment analysis is flawed.

### II. Failure to Produce Evidence

Although I cannot agree with the majority that Counts I through IV solely set

---

**8.** I believe that, in this context, the proper meaning of the word "enforce" is "to compel obedience to." Black's Law Dictionary 528 (6th ed.1990). The employee whose job it is to hire, supervise or discipline other employ-ees may be attempting to implement the institution's policies in the performance of job duties, but the employee is *not* compelling another to obey the institution's policies.

forth claims of corporate liability, I nevertheless would reverse the trial court's denial of summary judgment because, unlike the trial court, I believe that the Hamburg Center properly raised the "failure to produce evidence" issue and that the parents failed to produce evidence to refute the Hamburg Center's evidence showing that the Hamburg Center acted properly.

The Hamburg Center's motion for summary judgment clearly alleges that the parents failed to produce evidence to establish that the Hamburg Center breached professional standards of conduct, that Muthersbaugh had a history of abusive conduct which the Hamburg Center could have discovered before hiring him and that the Hamburg Center did not adequately supervise Muthersbaugh after hiring him. Although these allegations are not set forth as separate issues in the "Statement of Questions Involved" portion of the Hamburg Center's brief, the Hamburg Center addresses them in arguing that the Hamburg Center is immune from liability for alleged institutional negligence. (*See* R.R. at 415a–17a.) In addition, the record shows that the Hamburg Center preserved the issue at oral argument on the motion, in its request to amend the trial court's order denying summary judgment and in its concise statement of matters complained of on appeal. (*See* R.R. at 484a, 505a–06a.)

Having concluded that the Hamburg Center did *not* waive the "failure to produce evidence" issue, the next task is to determine whether the parents produced

sufficient evidence to refute the Hamburg Center's evidence.[9]

To show that the Hamburg Center failed to properly investigate the background of Muthersbaugh before hiring him, the parents presented evidence that the Pennsylvania State Police investigated Muthersbaugh for rape when he was sixteen years old. Muthersbaugh testified at his deposition that a fifteen-year-old girl accused him of rape, but the State Police who investigated the matter found that the girl "made the whole thing up." (R.R. at 88a.) Thus, the State Police did not file formal charges. (R.R. at 89a.) I agree with the Hamburg Center that such evidence is insufficient to overcome the motion for summary judgment with respect to whether the Hamburg Center conducted a proper background check of Muthersbaugh. In fact, the Hamburg Center could not have discovered this information because, under section 6308 of the Juvenile Act, law enforcement records and files concerning a sixteen-year-old child cannot be disclosed to the public *unless* the child has been adjudicated delinquent or a petition alleging delinquency has been filed. 42 Pa.C.S. § 6308. Here, there is no evidence that a delinquency petition was filed or that there was an adjudication of delinquency.

As to whether the Hamburg Center failed to supervise Muthersbaugh adequately after hiring him or failed to address the abuse adequately after it became known, the parents have presented no evidence to refute the Hamburg Center's evi-

9. The Hamburg Center's evidence shows that the Hamburg Center: (1) investigated Muthersbaugh's education and employment history; (2) obtained personal references; (3) requested criminal history record information; (4) provided sexual harassment training during his new employee orientation; (5) provided him with a job description stating that he was to assure an environment free of all forms of abuse; (6) provided ongoing training, including a sexuality policy review; (7) regularly evaluated his job performance; (8) became aware of the abuse on June 19, 2000; (9) suspended him without pay on June 21, 2000; and (10) terminated him on July 28, 2000. (R.R. at 262a, 265a–66a, 271a, 276a, 281a–300a.)

dence showing that the Hamburg Center acted properly.[10]

Accordingly, for this reason, I would reverse.

10. The parents presented evidence in an attempt to show that the Hamburg Center should have known about the abuse before June 19, 2000. With respect to Dashner, the evidence shows that he did not have a history of being sexually active. (R.R. at 387a, 392a.) However, on November 9, 1999, a Residential Services Aide entered Dashner's room and found another individual attempting sexual activity with Dashner. (R.R. at 392a, 458a.) Although Dashner stated that he did not want the other individual doing that to him, he was not resisting. *Id.* To prevent Dashner from being victimized again in this way, the Hamburg Center provided social-sexual education, during which Dashner stated that nothing like this had ever happened to him. *Id.* On December 6, 1999, Dashner stood in the hall outside his room, pulled down his underwear and yelled "Kiss this" several times. (R.R. at 451a.) On December 17, 1999, while in the elevator, Dashner punched, pushed and grabbed female staff inappropriately and cursed loudly. (R.R. at 452a.) We cannot say that the Hamburg Center should have known about the abuse based on these inci-

dents, and the parents have presented no expert testimony stating otherwise.

With respect to Moatz, the evidence shows that he had a history of being sexually active and a diagnosis that included pedophilia. (R.R. at 392a, 401a.) Susan E. Kraus, Ph.D., a licensed psychologist who was employed by the Hamburg Center from February of 1995 through February of 1998 as a consultant on sexuality therapy programs, stated in an affidavit that Moatz was a highly sexualized individual who was highly prone to being molested because of his mental retardation. (R.R. at 464a–65a.) Dr. Kraus stated that she advised the Hamburg Center of this, but the Hamburg Center did not change its policy with regard to the treatment and protection of highly sexualized patients. (R.R. at 465a.) Dr. Kraus further stated that, if the Hamburg Center had changed its policy, Moatz would not have been subject to the abuse of Muthersbaugh. *Id.* However, the enactment of policy is a corporate duty, and sovereign immunity is not waived with respect to the breach of a corporate duty.