747 A.2d 1242 (2000)
Jacqueline CLARK
v.
CAMBRIA COUNTY BOARD OF ASSESSMENT APPEALS, Appellant. (Two Cases).
H. Jay Clark
v.
Cambria County Board of Assessment Appeals, Appellant.
Elks BPOE
v.
Cambria County Board of Assessment Appeals, Appellant.
David and Jean Kulback
v.
Cambria County Board of Assessment Appeals, Appellant.
UMWA Federal Credit Union
v.
Cambria County Board of Assessment Appeals, Appellant.
Cambria County Board of Assessment Appeals et al.
v.
Jacqueline Clark et al.
Cambria County Board of Assessment Appeals, Appellant.
Commonwealth Court of Pennsylvania.
Argued November 3, 1999.
Decided February 10, 2000.
Reconsideration and Reargument Denied April 13, 2000.
*1243 *1244 Owen M. Sullivan, Ebensburg, for appellants.
Caram J. Abood, Johnstown, for appellees.
Before McGINLEY, J., KELLEY, J., and JIULIANTE, Senior Judge.
KELLEY, Judge.
Cambria County Board of Assessment Appeals (Board)[1] appeals from the orders of the Court of Common Pleas of Cambria County (trial court) dated July 21, 1998 and February 4, 1999, which reduced the fair market and assessed values for six properties as entered by the Board and directed all taxing bodies to credit the appropriate amount of taxes paid as a result of the terms of the orders. The Board is not appealing from the merits of the orders, but from the trial court's refusal to grant its Motion to Quash Assessment Appeals, and in the Alternative, Motion to Stay pending resolution of a Complaint in Equity in a separate but related matter. We vacate and dismiss with prejudice.
The facts of this case are as follows. Jacqueline Clark, H. Jay Clark, Elks BPOE, David and Jean Kulback, and UMWA Federal Credit Union (collectively, the property owners) filed a total of six tax assessment appeals relative to various properties they own on the grounds that the assessments were excessive. On October 13, 1997, the tax assessment appeals were heard by the Board and dismissed without reaching the merits. By formal decision dated October 20, 1997, the Board entered the assessments and dismissed the appeals. From the Board's decision, the property owners filed separate appeals with the trial court.
On July 15, 1998, the Board filed with the trial court a Motion to Quash Assessment Appeal and in the Alternative, Motion to Stay (Motion to Quash/Motion to Stay or pre-trial motions) in the six tax assessment appeals. With the pre-trial motions, the Board sought to quash and dismiss the tax appeals with prejudice or in the alternative stay the appeals until the resolution of a Complaint in Equity in a collateral matter involving the same six tax assessment appeals.
The Complaint in Equity was filed against Larry Rodgers, d/b/a W.L. Rodgers Associates, (Rodgers) and Attorney Caram J. Abood,[2] and sought to enjoin them from participating in tax assessment appeals, including the present appeals. The Board maintains that Rodgers is a non-aggrieved third party who solicited the property owners for the purposes of providing services in the preparation and filing of the tax assessment appeals. The Board contends that Rodgers' business practices constitute the illegal activities of champerty,[3] maintenance[4] *1245 and the unauthorized practice of law. The Board further contends that Rodgers, not the property owners, filed the present appeals under champertous agreements thereby rendering the present appeals void as they were not filed by the real parties in interest.
By orders dated July 21, 1998, the trial court denied the Board's pre-trial motions. On January 14, 1999, hearings on the merits of the six tax assessment appeals were held.[5] By final orders dated February 4, 1999, as modified by the orders of March 18, 1999,[6] the trial court reduced the fair market and assessed values for the subject properties for the tax year 1998 and directed all taxing bodies to credit the appropriate amount of taxes paid as a result of the orders. This appeal now follows.[7]
The Board has presented the following issues for our review:
Whether the trial court erred by denying the Board's Motion to Quash/Motion to Stay and thereafter rendering a decision on the merits of the six appeals when:
(a) no real case or controversy existed as the real parties in interestthe property ownerswere not properly before the trial court as they had unlawfully contracted away their respective rights of appeal through champertous agreements;
(b) the alleged power-of-attorney lacked standing to file said appeals on behalf of the property owners; and
(c) the Complaint in Equity seeking a permanent injunction in the six tax appeals was and is still pending.
First, the Board contends that the trial court erred in denying the Motion to Quash/Motion to Stay as the underlying appeals were not filed by the real parties in interestthe property ownersbut were prepared and filed by Rodgers, a non-aggrieved third party whose business activities constitute champerty, maintenance and the unauthorized practice of law. We agree.
As explained in Belfonte v. Miller, 212 Pa.Super. 508, 243 A.2d 150, 152 (1968), champerty is a "bargain by a stranger with a party to a suit, by which such third person undertakes to carry on the litigation at his own cost and risk, in consideration of receiving, if successful, a part of the proceeds or subject to be recovered." See Richette v. Pennsylvania R.R., 410 Pa. 6, 187 A.2d 910 (1963) (A champertous agreement is "one in which a person having otherwise no interest in the subject matter of an action undertakes to carry on the suit at his own expense in consideration of receiving a share of what is recovered."). A bargain to endeavor to enforce a claim in consideration of a promise of a share of the proceeds, or of any other fee contingent on success, is illegal, if it is also part of the bargain that the party seeking to enforce the claim shall pay the expenses incident thereto unless such party has or reasonably believes he has an interest recognized by law in the claim. Ames v. Hillside Coal and Iron Co., 314 Pa. 267, 272, 171 A. 610, 612 (1934); Belfonte.
In order for there to be champerty, three elements must be met. Belfonte. First, the party involved must be one who has no legitimate interest in the suit. Id. Second, the party must expend his own money in prosecuting the suit. Id. Third, the party must be entitled by the bargain to a share in the proceeds of the suit. Id.
The activity of champerty has long been considered repugnant to public policy against profiteering and speculating in litigation and grounds for denying the *1246 aid of the court. Ames. The common law doctrine against champerty and maintenance continues to be a viable doctrine in Pennsylvania and can be raised as a defense. Kenrich Corp. v. Miller, 377 F.2d 312, 314 (3d Cir.1967); Westmoreland County v. Rodgers, 693 A.2d 996 (Pa. Cmwlth.1997).[8] A plaintiff who sues on what would be another's claim except for such champertous agreement will not be permitted to maintain an action (Kenrich) as such a plaintiff is not a "real party in interest" as required by Pa. R.C.P. No.2002[9] and would not have standing to maintain the action.[10]
In the case before us, the Board has raised serious allegations about whether the "real parties in interest" were before the trial court. In the pre-trial motions, the Board alleged that Rodgers, not the property owners, filed the appeals based upon champertous agreements. In support of these allegations, the Board presented evidence of an assessment appeal application submitted by Rodgers on behalf of the property owners. The Board also submitted evidence that Rodgers funded and directed the litigation. The Board also informed the trial court of prior acts of champerty committed by Rodgers. Our review of the record before the trial court reveals that Rodgers' name appears on the tax assessment appeals filed with the Board in all six cases.
The allegations raised by the Board, if proven, would have the effect of nullifying the trial court's jurisdiction over the six tax assessment appeals. Kenrich. Based upon our review of the pre-trial motions and the evidence submitted in support thereof, we conclude that the trial court should not have proceeded on the merits of the underlying tax assessment appeals while the Complaint in Equity against Rodgers was still pending. By failing to grant the Motion to Stay pending resolution of the Complaint in Equity, we conclude that the trial court abused its discretion.
Ordinarily, we would vacate the orders of the trial court and remand the matter with directions that the trial court delay further action until the Complaint in Equity is resolved. However, at oral arguments conducted by this Court on November 3, 1999, the parties presented the Court with an adjudication and decree nisi entered against Rodgers on September 8, 1999 by the trial court.[11] The decree nisi enjoined Rodgers from participating further in any of the tax assessment appeals *1247 before the court; from directly or indirectly soliciting Cambria County property owners for the purpose of filing tax assessment appeals; preparing tax assessment appeals in Cambria County; and from participating in any respect in pending or future tax assessment appeals in Cambria County, except as a witness offering opinion testimony.
In the supporting opinion, the trial court found that Rodgers was engaged in the unauthorized practice of law and the illegal activity of champerty and maintenance in the six tax assessment appeals involved herein. The trial court found that Rodgers was not a person aggrieved by the assessments involved and therefore had no legitimate interest in the suit; the litigations were entirely financed by Rodgers and not by the property owners; and that Rodgers has or will share in the benefits of the appeals as Rodgers has received or will receive a fee, a portion (usually 100%) of the tax reduction for the first year. The trial court further found that Rodgers represented the property owners before the Board and that Rodgers possessed the sole discretion to determine whether an attorney should be hired and to decide how and whether to proceed with the appeals.
Based upon the above findings, it is clear that Rodgers, not the property owners, filed the present tax assessment appeals under champertous agreements. As Rodgers is not a real party in interest and does not otherwise have standing to file the appeals, we conclude that the trial court was without jurisdiction to proceed on the merits of the six tax assessment appeals.
Accordingly, the orders of the trial court are vacated and these matters are dismissed with prejudice.

ORDER
AND NOW, this 10th day of February, 2000, the orders of the Court of Common Pleas of Cambria County, dated July 21, 1998 and February 4, 1999, are vacated and these matters are dismissed with prejudice.
NOTES
[1] The issue of whether the Board has standing to appeal was not raised and we will not raise this issue sua sponte. See Statewide Building Maintenance, Inc. v. Pennsylvania Convention Center Authority, 160 Pa.Cmwlth. 544, 635 A.2d 691 (1993) (Question of standing is not an issue of subject matter jurisdiction and, therefore, cannot be raised by court sua sponte).
[2] The case against Abood was dismissed by an order granting Abood's motion for summary judgment.
[3] Champerty is defined as "A bargain between a stranger and a party to a lawsuit by which the stranger pursues the party's claim in consideration of receiving part of any judgment proceeds. It is one type of `maintenance,' the more general term which refers to maintaining, supporting, or promoting another person's litigation." Black's Law Dictionary (6th Ed.1990).
[4] Maintenance is defined as "An officious intermeddling in a lawsuit by a non-party by maintaining, supporting or assisting either party, with money or otherwise, to prosecute or defend the litigation." Id.
[5] City of Johnstown, Greater Johnstown School District, Central Cambria School District, and Cambria Township participated as interested parties.
[6] The trial court modified the February 4th orders by changing the tax year in question from 1997 to 1998.
[7] The appeals were consolidated by order of this Court dated March 22, 1999.
[8] In Westmoreland County v. Rodgers, this Court affirmed a trial court's order granting summary judgment in favor of the County and enjoining Larry Rodgers from pursuing any further tax appeals on behalf of his clients or other property owners on the grounds that Rodgers was engaged in the illegal activities of champerty and maintenance and the unauthorized practice of law.
[9] Rule 2002 of the Pennsylvania Rules of Civil Procedure provides that "all actions shall be prosecuted by and in the name of the real party in interest." Pa. R.C.P. No.2002. While Rule 2002 does not define "real party in interest," the generally accepted definition of this term is that the real party in interest is the person who has the power to discharge the claim upon which suit is brought and to control the prosecution of the action brought to enforce rights arising under the claims. Spires v. Hanover Fire Insurance Co., 364 Pa. 52, 70 A.2d 828 (1950), overruled in part on other grounds by Guy v. Liederbach, 501 Pa. 47, 459 A.2d 744 (1983); Kusmaul v. Stull, 356 Pa. 276, 51 A.2d 602 (1947); Lore v. Sobolevitch, 675 A.2d 805 (Pa.Cmwlth.1996). To be a real party in interest, then, one must not merely have an interest in the result of the action, but must be in such command of the action as to be legally entitled to give a complete acquittal or discharge to the other party upon performance. Spires; Lore.
[10] A person cannot invoke the jurisdiction of a court to enforce private rights, or to maintain a civil action for the enforcement of such rights, unless that person has some real interest in the cause of action, or a legal right, title, or interest in the subject matter of the controversy. Sierra Club v. Hartman, 529 Pa. 454, 605 A.2d 309 (1992).
[11] By order of the trial court dated January 13, 2000, the decree nisi dated September 8, 1999, was made absolute and entered as a final decree.