BRANDYWINE HEIGHTS AREA
SCHOOL DISTRICT,
Appellant,

v.

BERKS COUNTY BOARD OF
ASSESSMENT APPEALS and
Mountain Village, L.P.

Commonwealth Court of Pennsylvania.

Argued April 2, 2003.

Decided April 29, 2003.

John M. Stott, Reading, for appellant.

David E. Turner, Wyomissing, for appellees.

Before LEADBETTER, J., COHN, J. (P.), and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

The Brandywine Heights Area School District (the District) appeals from separate but identical orders of the Court of Common Pleas of Berks County (trial court), granting the motions for summary judgment filed on behalf of Mountain Village, L.P. (Mountain Village) and dismissing the District's appeals from the decisions of the Berks County Board of Assessment Appeals (the Board). We now affirm in part and reverse and remand in part.

In December of 1999, Elliot Weinstein of Weinstein Realty Advisors (hereafter col-

lectively referred to as Weinstein) met with the District's business manager, Steve Fischer, to discuss the possibility of an agreement with the District whereby the District could file tax assessment appeals on properties that Weinstein identified as undervalued.[1] On March 7, 2000, Weinstein and the District entered into an agreement for his services which was identified as a Contingency Fee Agreement for Real Estate Consulting Services (First Agreement). This First Agreement related to a mobile home park owned and operated by Mountain Village in Berks County and related solely to the 2001 tax year. This was the only property that Weinstein could identify as worthy of a tax assessment appeal.

This First Agreement provided that Weinstein would identify the property and then "coordinate with an independent appraiser for valuation services including developing the supporting documentation, and being available for all pre-trial preparation and testimony before [the Board], and/or the Court of Common Pleas, or any other higher court." (R.R. at 21a). All legal costs were to be "at the District's expense, through the solicitor for [the District], or other counsel, at the discretion of [the District]." *Id.* Further, this First Agreement provided that Weinstein would "pursue this appeal through all available legal channels" and when the appropriate authorities propose an assessment which Weinstein deems reasonable, Weinstein in his "sole opinion, will proceed toward its acceptance and discontinue the appeal process." In return for his services, Weinstein was to receive a contingency fee "predicated upon the assessment increase"

---

1. Prior to this time, as of 1986 when Mr. Fischer first became the business manager for the District, the District did not initiate any tax assessment appeals. However, the District was involved in assessment appeals initiated by local taxpayers during this period.

of "40% of the assessment increase" for 2001. *Id.*

Weinstein completed all the necessary forms with respect to the Mountain Village property and forwarded the same to the District's solicitor, John Stott (Stott). Stott reviewed the paperwork, obtained the necessary signatures of the District's representatives and filed the paperwork with the Board. The Board conducted an informal hearing at which only Stott appeared on behalf of the District. The Board, however, denied an increase in the tax assessment of Mountain Village's property. The District thereafter authorized Stott to file an appeal with the trial court, which he did.

In the meantime, the Board instituted an action in equity against Weinstein alleging that his agreement with the District, as well as other various local school districts, was champertous.[2] The trial court thereafter stayed the District's appeal and the appeals of other various taxpayers relating to the same issue. The Board's equity action was later resolved in April of 2002 via a stipulation executed by Weinstein and the Board and entered as an order of the trial court, whereby Weinstein was precluded from entering into any real estate consulting agreements with school districts located in Berks County in the form of the First Agreement.

About the same time the Board instituted its equity action against Weinstein, the District and Weinstein entered into a new agreement on April 4, 2001, simply titled Real Estate Consulting Services (Second Agreement), which also applied to the

2001 tax year. Although the wording of this Second Agreement differed from the prior one, the purpose and arrangements essentially remained the same. Specifically, as to the wording, this Second Agreement provided that Weinstein would merely provide "ongoing consulting regarding the merits of respective appeals" and the District would make all "final decisions regarding an appeal." (R.R. at 82a). Additionally, this Second Agreement characterized Weinstein's fees as "commissions" or "commission based," even though the "commission" remained at "forty percent (40%) of the assessment increases of each property" for the 2001 tax year. *Id.* Further, this Second Agreement provided that "[a]ll legal expenses are the responsibility of [the District]." *Id.*

In 2001, the District again instituted tax assessment proceedings against Mountain Village for the 2002 tax year. However, this action was premised upon the identical documentation collected by Weinstein and his appointed appraiser during the previous year's proceedings. Again, the Board denied the increase in tax assessment and Stott filed an appeal with the trial court. Mountain Village thereafter filed a motion for summary judgment with respect to each of the District's appeals alleging that Weinstein engaged in champerty and/or maintenance with the District.

Ultimately, the trial court issued separate but identical opinions and orders granting Mountain Village's motion, entering judgment in favor of it and against the District and dismissing the District's appeals. The trial court concluded that both

---

**2.** Champertous is a derivative of the term "champerty," which is defined as "a bargain between a stranger and a party to a lawsuit by which the stranger pursues the party's claim in consideration of receiving part of any judg-

ment proceeds." Black's Law Dictionary 231 (6th ed.1990). It is further defined as "one type of 'maintenance,' the more general term which refers to maintaining, supporting, or promoting another person's litigation." *Id.*

the First and Second Agreement between the District and Weinstein were champertous. In addition, the trial court concluded that the doctrines of champerty and maintenance could be raised as a defense. Further, the trial court noted that Weinstein assumed the position of a real party in interest, that he lacked standing to maintain the action and that, therefore, the court lacked subject matter jurisdiction. The cases were thereafter consolidated and the District proceeded to file a notice of appeal with the trial court.

■ On appeal,[3] the District first argues that the trial court erred as a matter of law in concluding that the First and Second Agreements were champertous. We disagree.

■ In order to establish a prima facie case of champerty, three elements must exist. Those elements are: 1) the party involved must be one who has no legitimate interest in the suit; 2) the party must expend its own money in prosecuting the suit; and 3) the party must be entitled by the bargain to share in the proceeds of the suit.[4] *Westmoreland County v. RTA Group, Inc.*, 767 A.2d 1144 (Pa.Cmwlth. 2001), *petition for allowance of appeal denied*, 567 Pa. 753, 788 A.2d 382 (2001);

*Clark v. Cambria County Board of Assessment Appeals*, 747 A.2d 1242 (Pa.Cmwlth. 2000), *petition for allowance of appeal denied*, 568 Pa. 740, 798 A.2d 1292 (2002). Additionally, "[t]he activity of champerty has long been considered repugnant to public policy against profiteering and speculating in litigation and grounds for denying the aid of the court." *Clark*, 747 A.2d at 1245–1246. Moreover, in *Clark*, we indicated that the doctrine of champerty continues to be viable in this Commonwealth and can be raised as a defense.

In this case, the evidence of record indicates that Weinstein initiated the tax assessment appeal by directly contacting the District in late 1999 and by preparing the necessary forms.[5] At that time, there is no dispute that Weinstein was not employed by the District, he was not involved in any case with the District as a property owner and he had no connection whatsoever to Mountain Village. Nor had Weinstein ever been previously contacted by the District to initiate such an appeal. In fact, Mr. Fischer testified before the trial court that between 1986, when he first began employment with the District, and 2000, the District had not initiated any tax assessment appeals. *See* R.R. at 87a.

Instead, as the trial court so found, the Agreements between Weinstein and the District appear to have been motivated

---

3. Our scope of review of an order granting or denying summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion. *Salerno v. LaBarr*, 159 Pa.Cmwlth. 99, 632 A.2d 1002 (1993), *petition for allowance of appeal denied*, 537 Pa. 655, 644 A.2d 740 (1994). Moreover, summary judgment is only appropriate when, after examining the record in the light most favorable to the non-moving party, there is no genuine issue of material fact, and the moving party clearly establishes that he is entitled to judgment as a matter of law. *Salerno*.

4. In its opinions, the trial court concluded that Weinstein had met each of these ele-

ments as he had no legitimate interest in the suit, Mr. Fischer testified that he was responsible for hiring and paying an appraiser and he is entitled to compensation in the amount of forty percent of any assessment increases, no matter if such compensation is described as a fee or as a commission.

5. Weinstein then forwarded the paperwork to Mr. Stott, the District's solicitor. Mr. Stott reviewed the paperwork, obtained the necessary signatures of the District representatives and proceeded to file the paperwork with the Board.

solely by Weinstein's desire to turn a profit, i.e., "40%" of any tax assessment increase. (R.R. at 21a, 82a). Moreover, the evidence of record indicates that Weinstein expended his own money in this appeal process with respect to the hiring of an appraiser. Mr. Fischer specifically testified that Weinstein was responsible for hiring an appraiser and that Weinstein was responsible for paying any appraisal fees. Mr. Fischer also indicated that the District was not involved in any way with the hiring of the appraiser and that the District neither directly paid the appraiser nor reimbursed Weinstein for the services of said appraiser.

As the evidence of record reveals that each of the elements of champerty had been met, we cannot say that the trial court erred as a matter of law in concluding that the First and Second Agreements were champertous.[6] Thus, the order of the trial court in this regard must be affirmed.

██ Next, the District argues that the trial court erred as a matter of law in relying upon the principles of champerty to support the entry of summary judgment and the dismissal of the underlying tax assessment appeal. We agree with the District that the trial court erred in granting summary judgment and in dismissing the underlying appeal.

██ In cases where an agreement is found to be champertous, the effect is to void the agreement itself without any consequences to the underlying case. *See, e.g., Augenti v. Cappellini*, 499 F.Supp. 50 (M.D.Pa.1980). Contrary to the District's assertion, the trial court did not rely only upon the principles of champerty to support the entry of summary judgment and the dismissal of the underlying appeal. Rather, after finding a champertous agreement, the trial court then determined that the real party in interest, i.e., the District, was not the party that was directing and controlling the litigation. It was on that basis that the trial court concluded that it was proper to dismiss the underlying tax appeals.

██ As this Court stated in *Clark*, "a plaintiff who sues on what would be another's claim except for such champertous agreement will not be permitted to maintain an action as such a plaintiff is not a 'real party in interest' as required by Pa. R.C.P. No.2002."[7] *Clark*, 747 A.2d at 1246. This is because "a person cannot invoke the jurisdiction of a court to enforce private rights, or to maintain a civil action for the enforcement of such rights, unless that person has some real interest in the cause of action, or a legal right, title or interest in the subject matter of the con-

---

6. Although Weinstein and the District attempted to avoid any impropriety by revising the wording of the Second Agreement, the fact remained that Weinstein had no legitimate interest in the tax assessment appeal, that he expended his own money in hiring an appraiser and paying the appraiser's fees and that he still shared in the proceeds of the appeal, i.e., under the Second Agreement he received a "commission," instead of a fee, of forty percent of any assessment increase.

7. Pa. R.C.P. No.2002(a) provides that "all actions shall be prosecuted by and in the name of the real party in interest." Pa. R.C.P. No.2002 does not define the term "real party

in interest." Nevertheless, "the generally accepted definition of this term is that the real party in interest is the person who has the power to discharge the claim upon which suit is brought and to control the prosecution of the action brought to enforce rights arising under the claims." *Clark*, 747 A.2d at 1246, n. 9 (citations omitted). In other words, to be a real party in interest, "one must not merely have an interest in the result of the action, but must be in such command of the action as to be legally entitled to give a complete acquittal or discharge to the other party upon performance." *Id.*

troversy." *Clark*, 747 A.2d at 1246, n. 10 (citations omitted). This Court in *Clark* found that the tax assessment appeals in that case were not filed by the property owners; rather, they were filed a third-party, Rodgers, who essentially directed and controlled the litigation. As Rodgers was not the real party in interest and did not otherwise have standing to file the appeals, this Court determined that the trial court was without jurisdiction to proceed on the merits of the tax assessment appeals.[8] *Clark*, 747 A.2d at 1247.

In the instant case, the District is the real party in interest. The question is whether the District or Weinstein directed and controlled the tax assessment appeals in question. If the District directed and controlled the tax assessment appeals, then the trial court had the jurisdiction to proceed with the appeals. Conversely, if Weinstein directed and controlled the tax assessment appeals, then the trial court was without jurisdiction to proceed and the granting of summary judgment would be proper. We disagree with the trial court, however, that the evidence supports the dismissal of the tax assessment appeals by way of a motion for summary judgment.

In the First Agreement in this case, there are some serious questions as to who was in control of the prosecution of the case. Although Mr. Stott represented the District and he alone appeared before the Board, the First Agreement provided that Weinstein would "coordinate with an independent appraiser" and "pursue this appeal through all available legal channels, including the Court of Common Pleas, if necessary."[9] (R.R. at 21a). Additionally, this First Agreement provided that

"[w]hen the appropriate authorities propose an assessment which [Weinstein] deem[s] reasonable, [Weinstein] in [his] sole opinion, will proceed toward its acceptance and discontinue the appeal process." *Id.*

The Second Agreement, however, superseded the First Agreement and attempted to clarify the responsibilities of the parties. Specifically, the Second Agreement contained significant modifications which essentially removed the decision-making authority granted to Weinstein as detailed above and placed such authority back in the District's hands. For example, the Second Agreement provided that Weinstein would merely provide "ongoing consulting regarding the merits of respective appeals" and that the District could "solely conclude final decisions regarding an appeal."[10] (R.R. at 82a).

Upon review of the evidence of record, including this Second Agreement, one could argue that the District was in control of the prosecution of the tax assessment appeal. At the very least, the evidence of record raises genuine issues of material fact as to which party was directing and controlling the litigation, thereby precluding the grant of summary judgment and the dismissal of the underlying appeal by the trial court. Hence, the order of the trial court in this regard must be reversed and the case remanded for consideration of this issue as well as the merits of the underlying appeal.

Finally, the District argues that the trial court erred as a matter of law in dismissing its appeal for the 2002 tax year when there was no such champertous agreement

---

8. The champertous agreement, being an illegal agreement, does not provide a person who is not a real party in interest with standing.

9. The First Agreement did provide that all legal costs would be at the District's expense, through its solicitor.

10. The Second Agreement reiterated that all legal expenses would be the responsibility of the District.

between it and Weinstein for that year. We agree.

The record lacks any evidence of an agreement between the District and Weinstein for the 2002 tax year. Contrary to the trial court's assertion, both the First and Second Agreements at issue in this case only concerned the 2001 tax year.[11] In their respective briefs to this Court, the District and Mountain Village acknowledge that these Agreements related solely to the 2001 tax year and that no such agreement existed for the 2002 tax year.

Nevertheless, Mountain Village relies on the fact, as the trial court so noted, that in pursuing the 2002 tax assessment appeal, the District and Mr. Stott utilized the appraisal report from 2001 paid for by Weinstein. In further reliance upon this fact, Mountain Village contends that the 2002 appeal was merely a continuation and direct consequence of the prior champertous relationship, thereby rendering the trial court's dismissal proper. However, the trial court never squarely addressed this issue, presumably due to the aforementioned misunderstanding concerning the Second Agreement. Consequently, this issue too must be remanded to the trial court for further consideration.

Accordingly, the order of the trial court, insofar as it concluded that the First and Second Agreements were champertous, is affirmed. However, the order of the trial court, insofar as it granted summary judgment in favor of Mountain Village and dismissed the District's appeals, is reversed. The case is remanded to the trial court for further findings consistent with this opinion.

### ORDER

AND NOW, this 29th day of April, 2003, the order of the Court of Common Pleas of

Berks County (trial court), insofar as it concluded that the agreements between the Brandywine Heights Area School District (the District) and Weinstein Realty Advisors were champertous, is affirmed. However, the order of the trial court, insofar as it granted summary judgment in favor of Mountain Village, L.P. and dismissed the District's appeals, is reversed. The case is remanded to the trial court for further findings consistent with this opinion.

Jurisdiction relinquished.

---

11. Upon review of the trial court's opinions in this case, it appears that the trial court was under the mistaken impression that the Second Agreement covered the 2002 tax year.