IN THE COMMONWEALTH COURT OF PENNSYLVANIA

E. Brendan Carroll      :
             :  No. 1580 C.D. 2013
    v.       :
             :  Argued: June 16, 2014
Exeter Township, Luzerne County, :
Pennsylvania,       :
      Appellant  :


BEFORE:  HONORABLE BERNARD L. McGINLEY, Judge
      HONORABLE RENÉE COHN JUBELIRER, Judge
      HONORABLE PATRICIA A. McCULLOUGH, Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH       FILED: August 4, 2014


    Exeter Township (Township) appeals from the August 26, 2013 order of the Court of Common Pleas of Luzerne County (trial court) denying the Township's motion for post-trial relief from the trial court's award of damages for a *de facto* taking. We reverse.


## Facts and Procedural History

    In 1998, the Township passed Ordinance No. 1,[1] which vacated Searfoss Road.[2] In this case, the 224.102-acre property at issue (Property) was

---

[1] Exeter Township, Pa., Ordinance 1 (August 3, 1998). Ordinance No. 1 read as follows:

    WHEREAS, the Board of Supervisors of the Township of Exeter have been informed that a dispute or conflict has developed regarding ownership of a roadway within the Township of Exeter

**(Footnote continued on next page…)**

known as Searfoss Road (a.k.a. "Castle Road"), and the property which abuts thereto; and

WHEREAS, an Ordinance was adopted by the Township of Exeter on April 6, 1959, declaring said Searfoss Road a public road with a thirty-three (33') foot right-of-way which sets forth a particular description . . . and

WHEREAS, the Township of Exeter has formally accepted and opened said road, and continues to maintain same, including, but not limited to, the installation of curbing, paving of street and, in essence, maintaining said roadway in a proper condition for vehicles to traverse; and

WHEREAS, the Board of Supervisors of the Township of Exeter has been provided with an unauthenticated and uncertified road docket dated 1900, which purports, professes and alleges that Searfoss Road extends to the Borough of Exeter, with a right-of-way of fifty (50') feet, the veracity of which the Board of Supervisors of Exeter Township unequivocally denies; and

WHEREAS, the Board of Supervisors of the Township of Exeter acknowledges that the purported property which abuts the roadway known as Searfoss Road has not been opened to, nor used by, the public for a period substantially in excess of twenty-one (21) years; and

WHEREAS, the Board of Supervisors of the Township of Exeter is desirous of resolving this dispute for its citizenry and particularly, the owners of property which front and/or abut all sides of Searfoss Road . . . .

NOW, THEREFORE, BE IT ENACTED AND ORDAINED, by the Board of Supervisors of the Township of Exeter, County of Luzerne and Commonwealth of Pennsylvania, and IT IS HEREBY ENACTED AND ORDAINED, by the authority of same, as follows:

1. That from and after the date hereof, any and all property that fronts and/or abuts the public road known as Searfoss Road (a.k.a. "Castle Road") . . . or any and all property which is purported, professed and/or alleged to be public pursuant to a certain unauthenticated and uncertified road docket dated 1900, be, and the same is, hereby vacated as a public road, street, alley or thoroughfare.

**(Footnote continued on next page…)**

previously owned by Helen Ola Durdon O'Leary and Esther Durdon (together, the Durdons). E. Brendan Carroll (Carroll) purchased the Property for $134,400.00 in 2000[3] and obtained a written assignment (Assignment) of all of the rights to any claims arising from the Durdons' previous ownership of the Property.[4] In light of this Assignment, in 2001 Carroll petitioned for appointment of a board of viewers, alleging that a *de facto* taking occurred in 1998 as a result of Ordinance No. 1. The

---

**(continued…)**

> 2. Notice of said vacating given in accordance with the provisions of the Second Class Township Code[, Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §§65101–68701,] and the Act of Assembly, in such cases made and provided.

(Reproduced Record (R.R.) at 147a-48a.)

[2] It is unclear from the record whether Searfoss Road abuts the Property or ends at a neighboring property (Romanowski Property) prior to reaching the Property.

[3] Carroll received the deed to the Property on September 28, 2000. He later received a corrective deed for consideration of $1.00 on November 13, 2000, granting him any rights to all easements over the Romanowski Property. (R.R. at 102a-06a.)

[4] The Assignment states as follows:

> HELEN OLA O'LEARY and ESTHER DURDON, for good and valid consideration, and intending to be legally bound, do hereby transfer and assign to E. BRENDAN CARROLL, all of our right, title and interest in and to a certain cause of action, set forth in the Complaint filed against Exeter Township Board of Supervisors, to No. 51-E of 1998, in the Court of Common Plea [sic] of Luzerne County; and all of our right, title and interest in and to any claims arising out of, or by reason of, our ownership of the land described in Luzerne County Deed Book 2613, at Page 101.

(R.R. at 159a.)

3

Township filed preliminary objections, which the trial court denied. The Township did not appeal this denial.[5] (R.R. at 2a, 11a-13a, 20a-24a, 30a, 102a-04a, 147a-49a, 159a.)

Subsequently, the trial court appointed a board of viewers. In 2004, the Township enacted Ordinance No. 2,[6] which rescinded Ordinance No. 1 and

---

[5] Pursuant to Pennsylvania Rule of Appellate Procedure 311(g)(1)(iii), Pa.R.A.P. 311(g)(1)(iii), in eminent domain cases a party must appeal from an order overruling preliminary objections in order to preserve the objections for subsequent appeal. Because the Township never appealed from this denial, the *de facto* taking of the Property has been established.

[6] Exeter Township, Pa., Ordinance 2004-2 (Mar. 9, 2004). Ordinance No. 2 states as follows:

> **WHEREAS,** the Board of Supervisors of the Township of Exeter were presented with an issue regarding whether a purported property which abuts a railway known as Searfoss Road had been open to, or used by, the general public, for a period substantially in excess of twenty one (21) years; and
> **WHEREAS,** in an attempt to resolve the dispute for citizenry and, particularly, the owners of the property which front and/or abut all sides of Searfoss Road . . . .
> **WHEREAS,** although refusing to acknowledge that any and all property which fronts and/or abuts the public road known as Searfross [sic] Road (a/k/a Castle Road) was, in fact, purported, professed and/or public, the Board of Supervisors in the Township of Exeter passed Ordinance No. 1 of 1998 on or about August 3, 1998 vacating the purported public road, street, alley or thoroughfare;
> **WHEREAS,** 53 P.S. §67305 of the Second Class Township Code provides for the procedures for a board of supervisors to vacate any road or highway or section thereof;
> **WHEREAS,** said procedure requires that if the board of supervisors votes in favor of exercising the power to vacate said road, it shall enact the necessary ordinance and file a copy of the ordinance, together with a draft or survey of the road, showing the location route thereof, in the Office of the Clerk of the Court of Common Pleas;

**(Footnote continued on next page…)**

4

returned all land rights to the situation that existed prior to the enactment of Ordinance No. 1. Following the enactment of Ordinance No. 2, the board of

---

**(continued…)**

> **WHEREAS,** subsequent thereto, any resident or property owner effected by the ordinance may within thirty (30) days after the enactment of the ordinance by the board of supervisors, upon entering in the court sufficient surety to indemnify the board of supervisors for all costs incurred in the proceedings, file exceptions to the ordinance, together with a petition for review;
>
> **WHEREAS,** the Board of Supervisors of the Township of Exeter do hereby confirm that they have failed to file the statutory requirements as set forth in §67305 of the Second Class Township Code;
>
> **WHEREAS,** the effect of which precludes the citizenry of challenging the enactment of said Ordinance vacating the purported Road by filing the appropriate exceptions thereto; and
>
> **WHEREAS,** the Board of Supervisors of the Township of Exeter do hereby desire to remedy the situation at issue;
>
> **AND NOW, THEREFORE, BE IT ENACTED AND ORDAINED,** by the Board of Supervisors of the Township of Exeter, County of Luzerne, Commonwealth of Pennsylvania, and **IT IS HEREBY ENACTED AND ORDAINED,** by the authority of same as follows:
>
> (1)    that Ordinance No. 1 of 1998, vacating a section of roadway on or near Searfoss Road (a/k/a Castle Road) is hereby vacated and/or rescinded as being procedurally defective;
>
> (2)    the enactment of this Ordinance shall revert all land ownership, rights-of-way, etc., as same existed prior to August 3, 1998; and
>
> (3)    the Board of Supervisors for the Township of Exeter do hereby reserve any and all rights provided to them in accordance with the Second Class Township Code pertaining to laying out, opening, changing or vacating any road or highway or section thereof, located within the Township of Exeter, Luzerne County.

(R.R. at 166a-68a.)

viewers conducted a hearing and issued an award of damages for the 1998 taking, from which the Township appealed to the trial court.[7] (R.R. at 4a, 30a, 166a-68a.)

On August 20-21, 2012, the trial court held a hearing.[8] Carroll testified that the best way to access the Property would be to travel on Searfoss Road and then to cross over the adjacent Romanowski Property. He stated that there is another access road (Old Dirt Road) on the other side of the Property, but it is a mile long and not maintained. He described Old Dirt Road as more like a trail. Carroll further testified that he was in the negotiating process for the Property when the Township passed Ordinance No. 1 in 1998 that vacated a portion of Searfoss Road as public. However, Carroll stated that he was confident that Searfoss Road was public, that the Township had illegally vacated it, and that he would be able to gain access again. (R.R. at 51a-53a.) Moreover, upon purchase of the Property, Carroll took the Assignment from the Durdons. (R.R. at 159a.)

Carroll testified that he hired Frank Grabowski (Grabowski), a professional land surveyor, to survey the Property; however, at the time Carroll

_____

[7] An appeal from the board of viewers' award is heard *de novo*. *Tinicum Real Estate Holding v. Department of Transportation*, 389 A.2d 1034, 1037 (Pa. 1978). The board of viewers' report and award are inadmissible as evidence. Section 703(3) of the Eminent Domain Code (Code), Act of June 22, 1964, P.L. 84, *as amended*, 26 P.S. §1-703(3) ("The report of the viewers and the amount of their award shall not be admissible as evidence."). This matter was commenced before the consolidation of the Code in 2006. *See* 26 Pa.C.S. §§101–1106. Therefore, the Act of June 22, 1964, Sp. Sess., P.L. 84, *as amended*, 26 P.S. §§1-101–1-903, *repealed by* the Act of May 4, 2006, P.L. 112, applies in this case and all citations herein will be to that act. *Gehris v. Department of Transportation*, 369 A.2d 1271, 1273 (Pa. 1977); *In re DeFacto Condemnation and Taking of Lands of WBF Associates, L.P.*, 972 A.2d 576, 580 n.2 (Pa. Cmwlth.), *appeal denied*, 982 A.2d 66 (Pa. 2009).

[8] The docket indicates that after the board of viewers' hearing in 2004 until the trial court's hearing in 2012 there were various motions and entries of appearances that delayed the hearing before the trial court. (R.R. at 4a-7a.)

6

testified, Grabowski had only provided documentation to Carroll demonstrating that Searfoss Road was in fact a road and had not yet surveyed the Property. Carroll stated that there is no other township, county, state, or federal road within the vicinity of the Property. Carroll claimed that he lost property value after the Township vacated Searfoss Road as public but that he was aware that Ordinance No. 2 rescinded Ordinance No. 1. He further stated that the rescission of Ordinance No. 1 had no practical effect on his access to the Property. Carroll also testified that he has incurred expenses throughout the process of trying to resolve the question of whether Searfoss Road extends to the Property. (R.R. at 53a-54a, 60a.)

On cross-examination, Carroll testified that he was aware that Searfoss Road had been vacated as public by the Township when he purchased the Property in 2000. Carroll indicated in an October 10, 2003 deposition that he planned to gain access to the Property after the purchase and that there had been no change in the Property since that time. Carroll stated that he received rights from the Durdons to file the *de facto* taking lawsuit and acknowledged that he is claiming damages for the loss of the opportunity to develop the Property in the future. Carroll stated that he could not testify to the legality of any other access point to the Property and that Searfoss Road abutted the Property until Ordinance No. 1 vacated the road. Carroll also noted that he has no personal knowledge of any legal action taken by the previous owners and that the original deed to the Property does not mention an easement over Searfoss Road or the Romanowski Property. (R.R. at 55a-58a, 60a.)

Grabowski testified that the previous landowners initially hired him to find an access road to the Property and that he continued this service for Carroll

7

after Carroll acquired the Property. Grabowski testified that Ordinance No. 2 only opened Searfoss Road to the Romanowski Property. He further testified that there is no mention of a roadway or an easement in the deed that conveyed the Property to Carroll. Grabowski stated that a 1959 Township ordinance ended Searfoss Road at the Romanowski property line. However, Grabowski also stated that a 1900 Township ordinance, since repealed, extended Searfoss Road through the Romanowski Property and a map of the area from the year 1900 depicted this extension. Grabowski testified that he had never seen anyone use the portion of Searfoss Road that extended across the Romanowski Property prior to 1998. (R.R. at 62a-63a, 77a-78a.)

Anthony Cherundolo (Cherundolo), a real estate appraiser, testified that Carroll hired him to appraise the Property and that he did so on August 7, 2002, using the market approach and citing comparable sales. Cherundolo testified that, with the vacation of Searfoss Road, the fair market value of the Property **after** the *de facto* taking in 1998 was the same as the purchase price, $134,400.00. He further testified as follows:

> [Carroll's Attorney]: But in addition to the visits you've described and so forth that you saw when you were up there, did you look at access from any other view than the --
>
> [Cherundolo]: There was -- there was -- at the time I did the appraisal, there was a former access from I think it was Searfoss Road. Now Searfoss Road comes in off -- if you went up Schooley Road, I think it's the first or second right-hand turn, and you would follow that back into the site. But there was not physical access. A garage was built on the cartway. And at that particular time the property had been -- the roadway had been vacated, at the time of my appraisal. So I did it as of the assumption that we were doing a hypothetical appraisal

8

saying if the road was not vacated, what would the property be worth to a developer? And that's what I developed.

[Carroll's Attorney]: And you did come up with a valuation, did you not?

[Cherundolo]: Yes. My indicated value with the road not being vacated was $650,000[.]

(R.R. at 68a-69a.)

Joseph O'Connor (O'Connor), a real estate broker and a broker appraiser testified that he performed an appraisal of the Property on February 8, 2003, also using the market approach, which relies upon comparable sales, and he opined that the Property had a fair market value of $134,400.00, Carroll's purchase price. O'Connor stated that there were no roads leading to the Property on which he felt comfortable driving his car. He also opined that the Property would not appreciate in value if there were more than limited access to the Property because of the Property's rough terrain. (R.R. at 64a-67a.)

Jack Ruane (Ruane), the Township's supervisor, testified that he always understood that Searfoss Road ended at the Romanowski Property. He added that he never saw a visible road that continued to the Property. Ruane testified that Old Dirt Road was not a Township road and was never maintained by the Township. (R.R. at 73a-74a.)

Joseph Romanowski (Romanowski), the owner of the Romanowski Property, testified that the prior owner of the Property used Old Dirt Road to access the Property. Romanowski stated that the Township paved Searfoss Road in 1973 and that the paved road stopped at the Romanowski Property. He also stated that the road on the Romanowski Property that extends to the Property is a "farm road" used by his family for its tractors. (R.R. at 75a-76a.)

9

At the conclusion of the hearing, the trial court denied the Township's motion *in limine* to set aside the denial of its preliminary objections and the denial of its motion for summary judgment,[9] thus *limiting the sole issue* for determination by the trial court *to an award of damages*. (R.R. at 78a-79a.) The trial court also denied the Township's motion *in limine* for preclusion of the corrective deed and the Assignment so as to keep these documents in the record for any possible appeal of the denial of the preliminary objections.[10] (R.R. at 79a.) However, the trial court noted that these documents had no direct bearing on his award of damages to Carroll. (R.R. at 79a.)

The trial court awarded damages to Carroll that included: $22,410.20 "attributable to the difference in the fair market value of the subject property prior to the passage of Ordinance No. 1 in calendar year 1998 by Exeter Township supervisors, less the fair market value after the passage of that ordinance," (R.R. at 79a); $7,937.50 for professional surveyor's fees; $1,250.00 for appraisal fees; and

---

[9] The orders denying the Township's preliminary objections and motion for summary judgment were previously issued by two separate trial court judges. We note that the motion *in limine* to set aside the denial of the preliminary objections and the denial of the motion for summary judgment was improper, because, as we stated in *County of Amusement Company v. County of Cambria Board of Assessment Appeals*, 692 A.2d 300, 301 n.7 (Pa. Cmwlth. 1997):

> [A] motion in limine is a pre-trial application before a trial court made outside the presence of a *jury*, requesting a ruling or order from the trial court prohibiting the opposing counsel from referring to or offering into evidence matters so highly prejudicial to the moving party that curative instructions cannot alleviate an adverse effect *on the jury*.

*Id.* (alteration in original) (citation and quotations omitted).

[10] We note again that the Township never appealed from the denial of the preliminary objections.

10

$500.00 for attorney's fees. The trial court accepted O'Connor's testimony regarding the comparable sales upon which he relied to determine the Property's fair market value **after** the *de facto* taking in 1998. The trial court also accepted as credible the testimony of O'Connor and Cherundolo that the fair market value of the Property **after** the taking was $134,400.00. However, the trial court disagreed with O'Connor's assessment that there would not be an increase in the Property's value if the Property had more than limited access. (R.R. at 79a-80a.) The trial court stated that "[w]hat . . . O'Connor did not take into account, as the Court has found, is that there was some reduced accessibility to the [P]roperty and usability of the [P]roperty . . . and accordingly . . . the Court disagrees with . . . O'Connor's testimony and overrides it with its own finding as to diminution in fair market value." (R.R. at 80a.) The trial court also did not credit Cherundolo's testimony that the fair market value of the Property with access from Searfoss Road would be $650,000.00, because the trial court found that the comparable properties upon which Cherundolo relied were, in fact, not comparable. The trial court noted that *Cherundolo failed to establish the Property's fair market value prior to the enactment of Ordinance No. 1*, in accordance with the Code, but only opined as to what the fair market value of the Property would be if there were access from Searfoss Road. (R.R. at 80a.)

The trial court found:

> In essence, the Court recognized -- recognizes that as a result of the subject de facto taken [sic], once again as previously determined by Judge Conahan, the value of the property was worth $100 less per-acre. Now, the value after is easily determined. The consensus view of both appraisers as well as the arms [sic] length sales price for the subject property amounted to $134,400. The Court's focus takes into account that the impact on

11

property value was in some limited measure an impingement on the recreational use and incidental use of the subject property. There was credible testimony that ATV vehicles had been able to use the property. *There was certainly no testimony that large vehicles of any size could readily access the property prior to the passage of the 1998 ordinance*.

\* \* \*

At any rate, the actions of the township in passing the ordinance diminished the recreational use of the premises specifically in the area of things like quad vehicles or ATV vehicles, but arguably in the way of the property owner being able to simply visit one's property and enjoy the view.

(R.R. at 79a-80a) (emphasis added). Thus, the trial court issued an order awarding Carroll a total of $32,097.70 in damages for the *de facto* taking of the Property between 1998, the year that the Township enacted Ordinance No. 1, and 2004, the year that the Township rescinded Ordinance No. 1. The Township filed a motion for post-trial relief, which the trial court denied by order dated August 26, 2013. (R.R. 7a-8a, 216a-229a, 237a.) It is from this order only that the Township appeals to this Court.

The trial court issued an opinion in support of its August 26, 2013 order on November 12, 2013.[11] Citing Pennsylvania Rule of Appellate Procedure 311(g)(1)(iii),[12] the trial court stated:

---

[11] Pa.R.A.P. 1925(a).

[12] Pa.R.A.P. 311(g)(1)(iii) ("Under subdivision (e) of this rule shall constitute a waiver of all objections to such orders and any objection may not be raised on any subsequent appeal in the matter from a determination on the merits").

12

> Initially, this Court would note that it denied all of [the Township's] motions that challenged whether or not a *de facto* taking had occurred on the ground that [the Township] had waived its right to do so by failing to file an appeal, pursuant to Pa.R.A.P. 311(e), of the Order of April 24, 2002, which overruled its preliminary objections.

(Trial court op. at 1.) The trial court stated that it assessed the damages for professional surveyor's fees, appraisal fees, and attorney's fees based on the credible testimony and documentary evidence presented at the hearing. Lastly, the trial court relied on its rationale set forth on "[p]ages 134-143 of the 'Transcript of Hearing'" for its award of $22,410.20 in diminution damages. (Trial court op. at 2.)

On appeal to this Court,[13] the Township argues that: (1) the trial court erred in awarding Carroll $7,937.50 in surveyor fees; (2) the trial court erred in awarding Carroll $22,410.20 in diminution damages; (3) the trial court erred in denying the Township's motion *in limine* to preclude the corrective deed and the Assignment; and (4) the trial court erred in failing to grant the Township's motion for post-trial relief because Carroll failed to present evidence that Searfoss Road had public use for the past twenty-one years or establish that Searfoss Road was deemed a public road by a Township ordinance or under the act commonly known as the General Road Law.[14]

---

[13] Our scope of review is limited to determining whether the trial court manifestly abused its discretion or committed an error of law. *Reading City Development Authority v. Lucabaugh*, 829 A.2d 744, 747 (Pa. Cmwlth. 2003).

[14] Act of June 13, 1836, P.L. 551, 36 P.S. §§1781–1785.

13

## Diminution Damages

The Township asserts that the trial court erred in awarding Carroll $22,410.20 in damages for the diminution in the Property's value because Carroll failed to establish the difference between the fair market value of the Property immediately before the condemnation and the fair market value of the Property immediately after the condemnation.

Section 609 of the Code[15] states "[j]ust compensation shall consist of the *difference between the fair market value* of the condemnee's entire property interest *immediately before the condemnation* and as unaffected thereby *and the fair market value* of his property interest remaining *immediately after such condemnation* and as affected thereby, and such other damages as are provided in this code." *Id.* (emphasis added). Fair market value is defined and determined according to section 603 of the Code as follows:

> Fair market value shall be the price which would be agreed to by a willing and informed seller and buyer, taking into consideration, but not limited to, the following factors:
>
> (1) The present use of the property and its value for such use.
> (2) The highest and best reasonably available use of the property and its value for such use.
> (3) The machinery, equipment and fixtures forming part of the real estate taken.
> (4) Other factors as to which evidence may be offered as provided by Article VII.

---

[15] 26 P.S. §1-609.

14

26 P.S. §1-603.

"The amount of damages shall be determined by the court unless a jury trial has been demanded." Section 517 of the Code, 26 P.S. §1-517. "The court may confirm, modify, change the report or refer it back to the same or other viewers. A decree confirming, modifying or changing the report constitutes a final order." *Id.*[16] Where a *de facto* taking has occurred, it is the *condemnee's burden to prove* on appeal from the board of viewers' award the *fair market value of the property immediately before and after* the date of the *de facto* taking. *Benkovitz v. Urban Redevelopment Authority of Pittsburgh*, 425 A.2d 1178, 1181 (Pa. Cmwlth. 1981).

Here, Carroll did not present any evidence to establish the fair market value of the Property prior to the *de facto* taking in 1998, which is the burden of proof that he must carry as the condemnee. *Benkowitz.* As the trial court correctly noted, Cherundolo offered no opinion regarding the fair market value of the Property prior to the 1998 *de facto* taking but only hypothesized as to the Property's value at the time of his appraisal in 2002 if the Property had access from Searfoss Road. The only other evidence in the record from Carroll is testimony describing the lack of access to the Property and the loss of enjoyment and use of the Property, which does not establish a fair market value basis prior to the 1998 taking, as is necessary in order for the trial court to determine the appropriate amount of diminution damages due to Carroll. The trial court also rejected Cherundolo's appraisal that the Property would be worth $650,000.00 if Searfoss Road had not been vacated as public. As the trial court recognized, the record is

---

[16] Notably, the statute does not provide that the trial court must accept an exact value presented by either party.

15

devoid of any evidence from Carroll upon which the trial court could rely to determine the value of the Property prior to the *de facto* taking.

While the trial court accepted O'Connor's testimony as credible regarding comparable properties that he used in determining the fair market value of the Property after the 1998 taking, Carroll failed to meet his initial burden of proving the fair market value of the Property prior to the 1998 taking.[17]  26 P.S. §1-609; *Benkowitz*.  Thus, the trial court erred in awarding damages for diminution in the Property's value.[18]

---

[17] Because Carroll has failed to establish that he is entitled to an award of damages for the diminution in value of the Property, it follows that he is also not entitled to surveyor's fees, appraisal fees, and attorney's fees.  26 P.S. §1-609 ("Where proceedings are instituted by a condemnee under section 502(e), a judgment awarding compensation to the condemnee for the taking of property shall include reimbursement of reasonable appraisal, attorney and engineering fees and other costs and expenses actually incurred."); *Marx Stationery & Printing Company v. Redevelopment Authority of City of Philadelphia*, 675 A.2d 769, 778 (Pa. Cmwlth. 1996) ("We believe that . . . costs and fees . . . may be awarded only to condemnees who have been awarded damages for a 'taking' of property.").

[18] The Township also contends that the trial court erred in denying the Township's motion *in limine* to preclude the corrective deed and the Assignment.  In essence, the Township is arguing that Carroll lacked the capacity to sue because there was lack of consideration for the corrective deed and the Assignment is barred by the doctrine of champerty, which "is a bargain by a stranger with a party to a suit, by which such third person undertakes to carry on the litigation at his own cost and risk, in consideration of receiving, if successful, a part of the proceeds or subject to be recovered."  *Clark v. Cambria County Board of Assessment Appeals*, 747 A.2d 1242, 1245 (Pa. Cmwlth. 2000).  However, the lack of capacity to sue must be raised on preliminary objections, which the Township failed to do.  Pa.R.C.P. No. 1028(a)(5) ("Preliminary objections may be filed by any party to any pleading and are limited to the following grounds . . . lack of capacity to sue, nonjoinder of a necessary party or misjoinder of a cause of action.").  The Township raised preliminary objections and "[a]ll preliminary objections shall be raised at one time."  Pa.R.C.P. No. 1028(b).  Lack of capacity to sue is waived if not raised on preliminary objections pursuant to Pennsylvania Rule of Civil Procedure 1032(a), which provides:

**(Footnote continued on next page…)**

16

Accordingly, we reverse.[19]

_____
PATRICIA A. McCULLOUGH, Judge

Judge McGinley concurs in result only.

_____

**(continued…)**

> A party waives all defense and objections which are not presented either by preliminary objection, answer or reply, except a defense which is not required to be pleaded under Rule 1030(b), the defense of failure to state a claim upon which relief can be granted, the defense of failure to join an indispensable party, the objection of failure to state a legal defense to a claim, the defenses of failure to exercise or exhaust a statutory remedy and an adequate remedy at law and any other nonwaivable defense or objection.

Pa.R.C.P. No. 1032(a). Thus, the Township waived this argument. Moreover, the trial court specifically "emphasize[d] that [the corrective deed and the Assignment] have no direct bearing on the Court's review of the evidence that it considers relevant to its charge to determine just compensation in the way of an award of damages in this matter." (R.R. at 79a.)

[19] The Township further contends that the trial court erred in finding that Searfoss Road had been a public road for the past twenty-one years or had been deemed a public road through the General Road Law or a Township ordinance. However, this argument involves the merits of the case, which have been decided by the denial of the preliminary objections by the trial court on April 24, 2002. As addressed above, "[a]n appeal may be taken as of right from an order overruling preliminary objections to a declaration of taking and *an order overruling preliminary objections to a petition for appointment of a board of viewers*." Pa.R.A.P. 311(e) (emphasis added). "Where an interlocutory order is immediately appealable under this rule, failure to appeal . . . [u]nder Subdivision (e) of this rule shall constitute a waiver of all objections to such orders and any objection may not be raised on any subsequent appeal in the matter from a determination on the merits." Pa.R.A.P. 311(g)(1)(iii). Here, the Township has appealed from the trial court's order awarding damages and not from the trial court's order denying the Township's preliminary objections. Thus, the Township has waived any argument regarding the merits of whether a *de facto* taking occurred.

17

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

E. Brendan Carroll : 
 : No. 1580 C.D. 2013
v. :
 :
Exeter Township, Luzerne County, :
Pennsylvania, :
              Appellant :

## ***ORDER***

AND NOW, this 4th day of August, 2014, the August 26, 2013 order of the Luzerne County Court of Common Pleas is reversed.


_____
PATRICIA A. McCULLOUGH, Judge