IN THE COMMONWEALTH COURT OF PENNSYLVANIA

QRK, LLC, : 
: No. 592 C.D. 2016
Appellant : Argued: December 15, 2016
:
v. :
:
Kenilworth Court Residents :
Association, Inc. :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED:  April 19, 2017


QRK, LLC appeals from an order of the Court of Common Pleas of Lancaster County (trial court) granting summary judgment to the Kenilworth Court Residents Association, Inc. (Association) and dismissing a declaratory judgment action seeking to invalidate an amendment to the Association's declaration of covenants. QRK argues that the trial court erred by granting summary judgment and dismissing the action based on foreclosure, misapplying standing and mootness doctrines to this case, ignoring the law of case doctrine and coordinate jurisdiction rule, and by treating QRK as an ordinary purchaser of the units rather than a successor by foreclosure.  Upon review, we reverse and remand.


**I. Background**

The Association is a registered non-profit corporation overseeing Kenilworth Court, a planned community of 59 townhouses located in East

Petersburg, Lancaster County, Pennsylvania. This case arises out of the Association's attempt to limit the number of townhouses (units) any owner may own in Kenilworth Court. The Association created the original homeowners' Declaration of Covenants, Conditions and Restrictions (Declaration) for Kenilworth Court in 1988. In 2007, the Association amended the Declaration by adopting the Uniform Planned Community Act (Act).[1] Then, in November 2011, the Association amended the Declaration again (2011 Amendment). Of relevance here, the 2011 Amendment modified two sections of the Declaration by: (1) limiting the number of units any owner may own to two, and (2) authorizing the Association to terminate an owner's ownership rights if the owner is in "egregious, continuous and frequent" violation of the Declaration and to force a judicial sale of the unit(s). Sections 5.1(c) and 8.7 of the 2011 Amendment; Reproduced Record (R.R.) at 132a, 138a.

On June 27, 2013, Dana Glass Multi-Family (Dana Glass) initiated a declaratory judgment action against the Association seeking to invalidate the 2011 Amendment. Margery S. Dana, Michael S. Glass and Dana Glass, collectively owned and rented 18 units.[2] As owners of the units, they were members of the Association. The units were encumbered by an open-end mortgage held by Jersey Shore State Bank that was recorded in 2004. Dana Glass asserted that the 2011

---

[1] 68 Pa. C.S. §§5101-5414.

[2] When the suit was first initiated, Margery S. Dana, Michael S. Glass and Dana Glass owned 20 units; but by March 2015, and for purposes of our discussion, they owned 18.

Amendment was invalid because the Association adopted the amendment without its consent in violation of the Act.[3]

In response, the Association filed a motion for summary judgment asserting Dana Glass's complaint was time-barred by Section 5219(b) of the Act, 68 Pa. C.S. §5219(b), which sets forth a one-year statute of limitations for challenging an amendment to a declaration. By interlocutory order dated April 10, 2015, the trial court, presided by Judge Donald R. Totaro, denied the motion, explaining that, because Dana Glass did not consent to the 2011 Amendment, as required by Section 5219(d) of the Act, 68 Pa. C.S. §5219(d),[4] the amendment was void *ab initio* as if it never existed. Therefore, the trial court held that the action is not barred by the one-year statute of limitations, and Dana Glass is entitled to be

---

[3] According to the Association, it suspended Dana Glass' voting rights because Dana Glass was in arrears on its monthly assessments at the time of the vote. Appellee's Brief at 4-5.

[4] Section 5219(d) provides:

> (d) When unanimous consent or declarant joinder required.—
> (1) Except to the extent expressly permitted or required by other provisions of this subpart, without unanimous consent of all unit owners affected, no amendment may create or increase special declarant rights, alter the terms or provisions governing the completion or conveyance or lease of common facilities or increase the number of units or change the boundaries of any unit, the common expense liability or voting strength in the association allocated to a unit or the uses to which any unit is restricted. In addition, no declaration provisions pursuant to which any special declarant rights have been reserved to a declarant shall be amended without the express written joinder of the declarant in such amendment.
> (2) As used in this subsection, the term "uses to which any unit is restricted" shall not include leasing of units.

68 Pa. C.S. §5219(d).

heard on the merits of its action. However, the trial court noted that, because only the Association moved for summary judgment, the holding of the opinion "is limited to deciding whether [the Association] may properly claim the one-year limitations period of Section 5219(b) as barring this action, and does not render any decision as to the ultimate validity of the [2011 Amendment]." Trial Court Opinion, 4/10/15, at 5 n.4; R.R. at 292a.

During the pendency of the declaratory judgment action, Dana Glass defaulted on its mortgage obligations. Jersey Shore State Bank filed a foreclosure complaint on July 30, 2014 to foreclose 18 units, and obtained a foreclosure judgment. Thereafter, on March 24, 2015, Jersey Shore State Bank assigned its interest in and to the open-end mortgage, security agreement and financing statement to QRK, which was duly recorded. R.R. at 363a-364a, 368a-369a. The next day, QRK purchased the 18 units offered at the sheriff's sale. R.R. at 343a. The deed was recorded in April 2015. R.R. at 337a-341a. Upon becoming the owner of the units, QRK became a member of the Association. *See* R.R. at 256a. Then, in November 2015, Dana Glass executed an assignment of claims purporting to assign its rights to the declaratory judgment action to QRK. R.R. at 301a. QRK currently owns 16 units.[5]

Pursuant to Rule 2004 of the Pennsylvania Rules of Civil Procedure, QRK filed a petition to substitute party and amend caption with the trial court. R.R. at 298a-299a. Specifically, QRK requested to substitute itself for Dana Glass in the declaratory judgment action to pursue the claims against the Association based on its purchase of the units and Dana Glass's assignment of claims. R.R. at

---

[5] QRK sold two of the 18 units to the Association.

4

298a-299a. The trial court granted the petition and ordered the substitution of parties and amended the caption. R.R. at 312a.

The Association then moved for summary judgment a second time claiming that the case was now moot and that QRK lacked standing. More particularly, the Association asserted that, upon foreclosure of the properties, Dana Glass lost standing to pursue its declaratory judgment action because it was no longer aggrieved by the corporate action. Dana Glass had no interest to assign to QRK in November 2015 -- seven months after the sale of the units and the termination of its membership in the Association. Moreover, QRK was not aggrieved by the corporate action because it was not a member at the time the Association adopted the 2011 Amendment. QRK had constructive notice of the 2011 Amendment before acquiring the units at the sheriff's sale and is thereby bound by the amendment.

QRK countered that the assignment of interest is valid because QRK is the successor owner of the units and assignee of Dana Glass's claims in this declaratory judgment action. QRK asserted it stands in the shoes of Dana Glass and can challenge the impact of the 2011 Amendment on its units as the real party in interest. QRK could not have undertaken to carry the lawsuit prior to its ownership as this would constitute champerty.[6]

---

[6] "[C]hamperty is a 'bargain by a stranger with a party to a suit, by which such third person undertakes to carry on the litigation at his own cost and risk, in consideration of receiving, if successful, a part of the proceeds or subject to be recovered.'" *Clark v. Cambria County Board of Assessment Appeals*, 747 A.2d 1242, 1245 (Pa. Cmwlth. 2000), *appeal denied*, 798 A.2d 1292 (2002) (quoting *Belfonte v. Miller*, 243 A.2d 150, 152 (Pa. Super. 1968)). Three elements must be met for there to be champerty: (1) "the party involved must be one who has no legitimate interest in the suit;" (2) "the party must expend his own money in prosecuting the suit;" and, (3) "the party must be entitled by the bargain to a share in the proceeds of the suit." *Id*. (citing *Belfonte*). "The activity of champerty has long been considered repugnant to public **(Footnote continued on next page…)**

5

The trial court, presided by Judge Leonard G. Brown, III, granted the Association's motion for summary judgment and dismissed the case. In its original opinion and order (filed March 14, 2016) and Pa. R.A.P. 1925(a) opinion (filed June 10, 2016), the trial court determined that Dana Glass could not assign its interest to another party after foreclosure. Once QRK purchased the properties, Dana Glass's case against the Association became moot as there was no case or controversy supporting the ongoing declaratory judgment action. Upon purchasing the units at sheriff's sale, QRK became a member of the Association. But, unlike Dana Glass, before becoming an owner and member of the Association, QRK was on notice of the Dana Glass lawsuit and the 2011 Amendment. QRK was not aggrieved by any corporate action, which occurred before QRK became a member. Thus, QRK lacks standing to proceed. From this decision, QRK now appeals.[7]

## II. Issues

QRK contends that the trial court erred by granting the Association's motion for summary judgment and dismissing the case based on the foreclosure.

---

**(continued…)**

policy against profiteering and speculating in litigation and grounds for denying the aid of the court." *Id*. at 1245-1246. "A plaintiff who sues on what would be another's claim except for such champertous agreement will not be permitted to maintain an action . . . as such a plaintiff is not a 'real party in interest' as required by Pa. R.C.P. No. 2002 and would not have standing to maintain the action." *Id*. at 1246.

[7] Our review of a trial court order granting summary judgment is limited to determining whether the trial court erred as a matter of law or abused its discretion. *Summers v. CertainTeed Corp.*, 997 A.2d 1152, 1159 (Pa. 2010). "[S]ummary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Id*.

6

In so doing, the trial court misapplied standing and mootness doctrines. In addition, QRK claims that the trial court ignored the law of the case doctrine and the coordinate jurisdiction rule because Judge Totaro previously concluded the 2011 Amendment was void *ab initio*. Finally, QRK asserts the trial court erred by treating QRK as an ordinary purchaser of the units and concluding that QRK was bound by the 2011 Amendment.

### III. Discussion
### A. Foreclosure, Standing, & Mootness
### 1. Contentions

QRK contends the foreclosure of the units did not extinguish the declaratory judgment action and that the trial court misapplied the concepts of standing and mootness. Property and contract rights cannot be altered without consent of the party whose interests are impacted. Pennsylvania courts permit successors by foreclosure to continue cases initiated prior to foreclosure where the issues run with the land, not with the landowner.

QRK is the successor by foreclosure and an assignee of Dana Glass's rights in the litigation. QRK, as both mortgagor and mortgagee, has an interest in seeing that the 2011 Amendment does not impact the value of the units purchased at sheriff's sale. QRK is the only party with motivation to protect the property's value. An assignee's rights are not inferior to those of the assignor. Thus, QRK has standing to proceed as successor by foreclosure and an assignee of Dana Glass to challenge the validity of the 2011 Amendment.

QRK further argues that the trial court erred by determining that Dana Glass, once divested of the units, had nothing to assign, and the case against the Association was moot. However, the foreclosure did not impact Dana Glass's ability to assign its interest in the suit because the litigation runs with the land.

7

There is a present or existing controversy concerning whether the units formerly owned by Dana Glass and now owned by QRK are impacted by the 2011 Amendment. Even if the controversy is technically moot, exceptions to the mootness doctrine must be applied because this case involves a question of public importance, the question presented is capable of repetition and apt to elude review, and QRK will suffer some detriment without a decision of the trial court.

Moreover, QRK contends Dana Glass could not have assigned any of its rights prior to the foreclosure sale. If Dana Glass had assigned its rights to QRK before QRK owned the properties, the assignment of the claim would have been champertous. The trial court's decision creates a "catch 22" situation that results in manifest injustice.

QRK maintains that the trial court erred by relying on QRK's ability to maintain a claim in its own right as the basis for standing. The issue was whether QRK could pursue Dana Glass's claims as an assignee, not whether QRK had standing to challenge the amendment in its own right. The trial court's reliance on QRK's ability to independently maintain the suit without the assignment from Dana Glass is erroneous.

The Association counters the trial court correctly applied concepts of standing and mootness to dismiss the case. Dana Glass maintained standing in the lawsuit up until March 25, 2015, when the units were sold at sheriff's sale. Upon foreclosure, Dana Glass was no longer an owner of any units or a member of the Association. Consequently, Dana Glass was no longer affected or aggrieved by the 2011 Amendment. Thus, Dana Glass's case against the Association challenging corporate action became moot. In other words, Dana Glass's interest in the lawsuit was extinguished upon foreclosure and could not be transferred to another party.

8

The concept of mootness through an intervening loss of standing is well settled. Although Dana Glass initially had standing, once it sold the units, it no longer had standing to challenge the amendment and the case became moot. The mootness doctrine requires an actual controversy at all stages of review, not just when the complaint is filed. The trial court properly explained why none of the exceptions to the mootness doctrine apply here. Even if an exception were applicable, QRK never showed how it or any other party will suffer any detriment by a subsequent sale of the properties.

Finally, the Association asserts that the trial court properly determined that QRK cannot independently maintain this action based on lack of standing. QRK had no membership or voting rights in November 2011 when the amendment was adopted. Therefore, QRK was not aggrieved by the corporation action. Thus, QRK cannot maintain this declaratory judgment action.

## 2. Analysis

We begin by examining the general principles of standing. A party seeking judicial resolution of a controversy must establish as a threshold matter that it has standing to maintain the action. *Johnson v. American Standard*, 8 A.3d 318, 329 (Pa. 2010). A party can show that it has been aggrieved if it "can establish that [it] has a substantial, direct and immediate interest in the outcome of the litigation." *Id*. at 329; *accord William Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269, 280 (Pa. 1975).

Rule 2002 of the Pennsylvania Rules of Civil Procedure requires that "all actions shall be prosecuted by and in the name of the real party in interest." Pa. R.C.P. No. 2002. Although Rule 2002 does not define "real party in interest,"

"the generally accepted definition of this term is that the real party in interest is the person who has the power to discharge the claim upon which suit is brought and to control the prosecution of the action brought to enforce rights arising under the claims." *Clark v. Cambria County Board of Assessment Appeal*s, 747 A.2d 1242, 1246 (Pa. Cmwlth. 2000), *appeal denied*, 798 A.2d 1292 (Pa. 2002). Indeed, "[a] person cannot invoke the jurisdiction of a court to enforce private rights, or to maintain a civil action for the enforcement of such rights, unless that person has some real interest in the cause of action, or a legal right, title, or interest in the subject matter of the controversy." *Id*. at 1246 n.10 (citing *Sierra Club v. Hartman*, 605 A.2d 309 (Pa. 1992)).

> Rule 2004 of the Pennsylvania Rules of Civil Procedure provides:
>
> If a plaintiff has commenced an action in his or her own name and thereafter transfers the interest therein, in whole or in part, the action may continue in the name of the original plaintiff, or upon petition of the original plaintiff or of the transferee or of any other party in interest in the action, the court may direct the transferee to be substituted as plaintiff or joined with the original plaintiff.

Pa. R.C.P. No. 2004. In addition, Rule 2352 provides a "successor may become a party to a pending action by filing of record a statement of the material facts on which the right to substitution is based." Pa. R.C.P. No. 2352. Neither Rule 2004 nor Rule 2352 contains a provision for any time limit within which to make a substitution.

"Under the law of assignment, the assignee succeeds to no greater rights than those possessed by the assignor." *Horbal v. Moxham National Bank*, 697 A.2d 577, 583 (Pa. 1997). "An assignment is a transfer of property or some

10

other right from one person to another, and unless in some way qualified, it extinguishes the assignor's right to performance by the obligor and transfers that right to the assignee." *Id*. "Where an assignment is effective, the assignee stands in the shoes of the assignor and assumes all of his rights." *CitiMortgage, Inc. v. Barbezat*, 131 A.3d 65, 69 (Pa. Super. 2016).

Dana Glass, as the owner of the units and member of the Association at the time the 2011 Amendment passed, had standing to challenge the amendment based on its claim that the amendment would deprive it of its property rights without consent.[8] Dana Glass was the real party in interest. The pertinent question before us is whether Dana Glass could assign or transfer its interest in the pending litigation to QRK or whether the foreclosure extinguished Dana Glass's interest and mooted the case entirely.

In support of its position that the foreclosure did not extinguish the litigation or its right to proceed as assignee, QRK relies on *Bily v. Board of Property Assessment, Appeals and Review of Allegheny County*, 44 A.2d 250 (Pa.

---

[8] Section 5219 of the Act requires unanimous consent of all unit owners whose use of a unit is affected or restricted by a proposed amendment. 68 Pa. C.S. §5219. In addition, in *Schaad v. Hotel Easton Company*, 87 A.2d 227, 230 (Pa. 1952), our Supreme Court held, with emphasis added:

> a general reservation of the power to amend the by-laws of a corporation cannot be construed as permitting the abrogation of substantial rights of property of the shareholders or the alteration of their contractual relations inter se, but only the changing of regulations governing the administration and conduct of the corporation's internal affairs; *provisions affecting property or contractual rights cannot be repealed or altered without the consent of the parties whose interests are thereby impaired*. No amendment of defendant's by-laws, therefore, could legally change the preferential rights accorded to the preferred stock unless the holder of the stock assented thereto.

11

1945), and *Broadway Penn Mutual Fee, L.P. v. Zoning Board of Adjustment of the City of Philadelphia* (Pa. Cmwlth., Nos. 2804 C.D. 2010, 2805 C.D. 2010, 2806 C.D. 2010, filed April 18, 2012) (unreported).[9]

In *Bily*, owners of a property appealed from a triennial assessment to the board of property assessment. While the appeal was pending, the mortgagee of the property instituted foreclosure proceedings and purchased the property at the sheriff's sale, at which time it was required to pay all taxes. The mortgagee requested to be substituted as the owner of the property in the assessment appeal as an intervenor or successor in interest to the prior owners. The property assessment board denied substitution and allowed the prior owners to withdraw their appeal. The trial court likewise denied mortgagee's writ to allow her to intervene or be substituted in the appeal proceedings. *Bily*, 44 A.2d at 250-251.

On appeal, the Supreme Court ruled such conclusions were "wrong" explaining:

> The right of intervention should be accorded to any one [sic] having title to property which is the subject of litigation, provided that his rights will be substantially affected by the direct legal operation and effect of the decision, and provided also that it is reasonably necessary for him to safeguard an interest of his own which no other party on the record is interested in protecting. . . . The right of intervention or of substitution especially arises when a beneficial interest in the cause of action is acquired *pendente lite*, as by purchase of the property during the course of the litigation.

---

[9] Section 414 of this Court's Internal Operating Procedures authorizes the citation of unreported panel decisions issued after January 15, 2008, for their persuasive value, but not as binding precedent. 210 Pa. Code §69.414.

*Bily*, 44 A.2d at 251. The Supreme Court continued: "a change in the ownership of the property while the proceedings are pending effects an automatic change in the identity of the litigants and, although permission to intervene is ordinarily within the discretion of the court, the right in such cases, in the absence of qualifying circumstances, is such an absolute one that the refusal to recognize it constitutes an abuse of judicial discretion." *Id.*

The Supreme Court added that the board should have denied the prior owners' request to withdraw their appeal because it was prejudicial to the rights of others. Indeed, "a plaintiff cannot discontinue if he has ceased, by reason of an assignment of the cause of action, to be the real party in interest and if the discontinuance is opposed by the person in whom the beneficial interest has vested." *Id.* (citing *McCullum v. Coxe*, 1 U.S. 139 (1785)).

More recently, in *Broadway*, this Court examined whether a party lacked standing to pursue a variance where, during the course of proceedings, the property was foreclosed upon and the original applicant no longer owned the property. The foreclosing party/purchaser admittedly did not wish to develop the property in a manner that required a variance. Notwithstanding, it requested permission to intervene or substitute as the owner of the property to pursue the variance, which the trial court granted.

On appeal, this Court applied the principles expressed in *Bily* and held that the trial court did not err in allowing the purchaser to intervene to substitute for the original applicant. The variance ran with the land. If granted, the variance would increase the property's value, thereby making the subsequent owner by foreclosure an interested party and the only party with motivation to protect the property's value.

Although *Bily* and *Broadway* involved a tax assessment appeal and zoning matter, respectively, we believe their analysis regarding right of succession is applicable here. The critical element is whether the 2011 Amendment runs with the land.

"Covenants, to run with the land, ordinarily must affect the land and are intended to pass with it, and covenants which are merely personal do not so run." *Logston v. Penndale, Inc.*, 576 A.2d 59, 61 (Pa. Super. 1990). "A personal covenant binds only the person who made the covenant, and not future successors in title." *Treasure Lake Property Owners Association, Inc. v. Meyer*, 832 A.2d 477, 482 (Pa. Super. 2003). "Covenants that run with the land are personally binding on the current holder, as well as any future successors in title." *Id.*

Here, the challenged provisions of the 2011 Amendment provide:

> Notwithstanding anything to the contrary set forth in this Declaration, or any amendment thereto, no owner shall be permitted to own or have an interest in more than two (2) non-owner occupied dwelling units. For purposes of this restriction, an owner shall be considered an individual, partnership, limited liability company, corporation, trust or other entity in which an owner is, but not limited to, a partner, member, shareholder, trustee or principal.

> \* \* \*

> Involuntary Sale. If any owner (either by his own conduct or any other occupant of his Unit) shall violate any of the covenants, restrictions or provisions of this Declaration or the Rules and Regulations adopted by the Board and such violation(s) is egregious, continuous or frequent, the Board of Directors will notice the owner and resident to cease and desist. Thereupon an action in equity may be filed by the Association President, subject to a unanimous Board vote, against the defaulting Owner for a decree of mandatory injunction against the Owner

14

or Occupant or, in the alternative, a decree to evict the tenant and/or to declare the termination of the defaulting Owner's right to occupy, use or control the Unit owned by him on account of the breach of Declaration or Rule and ordering that the right, title and interest of the Owner in the Property shall be sold (subject to the lien of an existing mortgage) at a judicial sale upon such notice and terms as the court shall establish, except that the court shall enjoin and restrain the defaulting Owner from reacquiring his interest in the Property at such judicial sale. The proceeds of any such judicial sale shall first be paid to discharge court costs, court reporter charges, reasonable attorney's fees and all other expenses of the proceeding and sale, and all such items shall be taxed against the defaulting Owner in such decree. Any balance of proceeds, after satisfaction of such charges and any unpaid assessments hereunder or any liens, shall be paid to the Owner. Upon the confirmation of such sale, the purchaser thereof shall thereupon be entitled to a Resale Certificate, to a deed to the Unit ownership and to immediate possession. It shall be a condition of any such sale, and the decree shall provide, that the purchaser shall take the interest in the Property sold subject to this Declaration.

Sections 5.1(c) and 8.7 of the 2011 Amendment; R.R. at 132a, 138a-139a.

Significantly, Section 9.4 of 2011 Amendment provides:

Covenants Running With Land. All covenants, conditions, restrictions and agreements herein contained: are made for the direct, mutual and reciprocal benefit of each and every Lot of the Subject Property; shall create mutual equitable servitudes upon each Lot in favor of every other Lot; shall create reciprocal rights and obligations between the respective Owners and Occupants of all Lots and privity of contract and estate between all grantees of said Lots, their heirs, successors and assigns; and shall, as to the Owner and Occupant of each Lot, his heirs, successors and assigns, *operate as covenants running with the land*, for the benefit of all other Lots, except as provided otherwise herein. This section in no way restricts the proper amendment or

15

> modification of the Declaration and the agreements as set forth therein.

R.R. at 139a (emphasis added).

The 2011 Amendment clearly runs with the land and binds all future successors in title. Contrary to the Association's position, the Dana Glass litigation is more than a mere contractual dispute challenging a corporate bylaw. Rather, just like the use variance in *Bily* and the tax assessment in *Broadway*, the 2011 Amendment affects and adheres to the property, not just the property owner. Therefore, the right of substitution must be accorded to the party having title to the property subject to litigation to safeguard its interest. *Bily*. That party is QRK.

QRK, as the subsequent owner by foreclosure, is the real party in interest and the only party with motivation to protect the property's value and challenge the validity of the 2011 Amendment. Although QRK was not a member of the Association when it passed the amendment, QRK has standing to maintain the declaratory judgment action against the Association because the challenged 2011 Amendment runs with the land. QRK has title to units affected by the 2011 Amendment. QRK's rights will be substantially affected by the direct legal operation and effect of any decision regarding the legality of the 2011 Amendment, which, if unchallenged, would require QRK to sell off 14 of its 16 units.

Contrary to the Association's position, QRK did not consent to the restrictive covenant when it purchased the units. Rather, like the purchasers in *Bily* and *Broadway*, QRK purchased the units subject to Dana Glass's pending litigation. By purchasing the property during the course of litigation affecting the property, QRK acquired a beneficial interest in the cause of action. *See Bily*. It later acquired the right to pursue that litigation by substitution. Thus, QRK now

16

stands in the shoes of Dana Glass. The trial court erred in determining that QRK lacked standing to pursue the declaratory judgment action.[10]

We next examine whether the action is moot. "[T]he mootness doctrine requires an actual case or controversy to be extant at all stages of a proceeding." *Pichelsky v. Lackawanna County*, 88 A.3d 954, 964 (Pa. 2014). "[C]ourts will not decide moot questions." *Public Defender's Office of Venango*

---

[10] In addition, we note that QRK also had a right to intervene as mortgagee to protect and preserve its security interest in the units if Dana Glass had not assigned its rights. A mortgage is both a conveyance in form as well as security interest. *Pines v. Farrell*, 848 A.2d 94, 100 (Pa. 2004). "[A] mortgage is in reality only a security for the payment of money, or performance of other collateral contract." *Bulger v. Wilderman*, 101 Pa. Super. 168, 171 (1930). "[I]t's . . . a pledge of the land as security." *Id.* "The mortgagor remains the owner of the land mortgaged, but the mortgagee, is entitled to its possession to be held as security until his debt is paid." *Id.*

Rule 2327(4) of the Pennsylvania Rules of Civil Procedure provides that "[a]t any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein . . . if . . . the determination of such action may affect any legally enforceable interest of such person whether or not such person may be legally bound by a judgment in the action." Pa. R.C.P. No. 2327(4). In *Keener v. Zoning Hearing Board of Millcreek Township*, 714 A.2d 1120, 1123 (Pa. Cmwlth. 1998), this Court determined a mortgagee of a neighboring property was a proper intervening party. There, a landowner sought review of decision of township zoning hearing board denying its application for variance to operate a quarry. The neighboring property owner (neighbor) intervened. During the dispute, the neighbor sold the adjoining property and the property across street from the landowner's property, but retained a purchase-money mortgage on the latter property. But, upon motion by the landowner, the trial court dismissed the neighbor as an intervening party and approved a settlement stipulation between the landowner and the township. The neighbor appealed. On appeal, we determined that the neighbor's status as a mortgagee of the property gave it sufficient interest to intervene pursuant to Rule 2327(4). We opined that the neighbor "should have the opportunity to voice its concerns about what would happen to the value of the property on which it holds the mortgage, in order to protect its interests." *Keener*, 714 A.2d at 1123. We concluded that the trial court abused its discretion and erred as a matter of law when it dismissed the neighbor as an intervenor.

The same holds true here. QRK, as the mortgagee, could have intervened to protect its equity and security interest in the units, which are impacted by the 2011 Amendment. QRK acquired its interest in the mortgage prior to the foreclosure sale. As mortgagee, QRK, just as Jersey Shore State Bank before it, had an interest in protecting the value of the units because they served to secure the mortgage debt. The foreclosure sale did not sever or alter this interest.

17

*County v. Venango County Court of Common Pleas*, 893 A.2d 1275, 1279 (Pa. 2006). A matter may become moot through an intervening loss of standing, where events "deprive the litigant of the necessary stake in the outcome." *Magnelli v. State Civil Service Commission*, 423 A.2d 802, 804 (Pa. Cmwlth. 1980). In this regard, our Supreme Court explained:

> The cases presenting mootness problems involve litigants who clearly had standing to sue at the outset of the litigation. The problems arise from events occurring after the lawsuit has gotten under way—changes in the facts or in the law—which allegedly deprive the litigant of the necessary stake in the outcome. The mootness doctrine requires that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.

*In re Gross*, 382 A.2d 116, 119 (Pa. 1978) (internal quotation and citation omitted); *accord Public Defender's Office*, 893 A.2d at 1279.

Although an issue may become moot during the pendency of an appeal, there are exceptions to the rule. *Public Defender's Office*, 893 A.2d at 1279. "Exceptions to this principle are made [(1)] where the conduct complained of is capable of repetition yet likely to evade review, [(2)] where the case involves issues important to the public interest or [(3)] where a party will suffer some detriment without the court's decision." *Id.* at 1279-80 (quoting *Sierra Club v. Pennsylvania Public Utility Commission*, 702 A.2d 1131, 1135 (Pa. Cmwlth. 1996), *aff'd*, 731 A.2d 133 (Pa. 1999)).

Upon review, the matter is not moot because the 2011 Amendment runs with the land. Although Dana Glass may no longer be the real party in interest, QRK, as the owner of the units has a necessary stake in the outcome of

18

this litigation. Thus, an actual case or controversy still exists regarding the applicability of the 2011 Amendment to these units.

Even assuming that the matter is somehow moot, the detrimental exception applies here. The 2011 Amendment threatens to impair QRK's equity and security interest by forcing the immediate sale of all but two units, without regard to market conditions or the impact the sudden supply of 14 units will have on market pricing, as well as the need to find at least seven qualified buyers as opposed to just one. QRK will clearly suffer some detriment if the 2011 Amendment forces the sale of its units without the benefit of the court's decision.

## IV. Conclusion

For these reasons, we conclude that the trial court erred by granting summary judgment to the Association dismissing the declaratory judgment action; we reverse its order and remand for proceedings on the merits of the declaratory judgment action regarding the validity of the 2011 Amendment.[11]

MICHAEL H. WOJCIK, Judge

---

[11] In light of this determination, we need not address the remaining issues.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

QRK, LLC,                              :
                                       : No. 592 C.D. 2016
                    Appellant          :
                                       :
           v.                          :
                                       :
Kenilworth Court Residents             :
Association, Inc.                      :

# O R D E R

AND NOW, this 19<u>th</u> day of <u>April</u>, 2017, the order of the Court of Common Pleas of Lancaster County (trial court) is REVERSED, and this matter is REMANDED to the trial court for proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.

_____
MICHAEL H. WOJCIK, Judge